**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JACK OLTMAN, individually and as
Executor of the Estate of Bernice
Oltman; SUSAN OLTMAN,
          *Plaintiffs-Appellants,*

          v.

HOLLAND AMERICA LINE, INC., a
Washington corporation; HOLLAND
AMERICA LINE—USA, INC., a
Delaware corporation,
          *Defendants-Appellees.*

No. 07-35135

D.C. No.
CV-05-01408-JLR

OPINION

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted
July 9, 2008—Seattle, Washington

Filed August 19, 2008

Before: Richard R. Clifton and N. Randy Smith,
Circuit Judges, and Brian Sandoval,* District Judge.

Opinion by Judge Clifton

---

*The Honorable Brian Sandoval, United States District Judge for the
District of Nevada, sitting by designation.

## COUNSEL

Noah C. Davis (argued), In Pacta, PLLC, Seattle, Washington, for the plaintiffs-appellants.

John P. Hayes (argued) and Paul S. Smith, Forsberg & Umlauf, P.S., Seattle Washington, for the defendants-appellees.

## OPINION

CLIFTON, Circuit Judge:

Jack Oltman and his mother, Bernice Oltman,[1] allege that they both contracted a serious gastrointestinal illness on a cruise ship operated by Defendants Holland America Line, Inc. and Holland America Line—USA, Inc. (collectively, Holland). Together with Jack's wife Susan, they filed an action against Holland in Washington state court, which later dismissed the action based on a forum selection clause in the cruise contract.[2] The same day the state court dismissed the action, the Oltmans filed an essentially identical action against Holland in the federal court specified in the forum selection clause. Holland moved for summary judgment, arguing that the federal filing was too late based on a one-year limitations clause contained in the cruise contract. The Oltmans objected, arguing, among other things, that their filing in state court had been timely even though the one-year period had expired prior to their federal filing. The district court granted summary judgment on all claims in favor of Holland after concluding the claims were time-barred under the contract.

The primary question presented by this appeal is whether the contractual limitations period should have been equitably tolled based on the timely filing of the state court action and the prompt filing in federal court after the state action was dismissed. We answer that question in the affirmative and reverse.

---

[1]Bernice passed away on September 19, 2006. Her interests in this lawsuit are now represented by Jack, as the executor of Bernice's estate.

[2]Because Jack, Bernice, and Susan Oltman share the same last name, in this opinion they are identified by their first names.

## I.   Background

Jack booked a cruise for himself and his mother, Bernice, on March 18, 2004. They boarded Holland's ship, the MS *Amsterdam*, in Chile less than two weeks later, on March 31, 2004, and arrived in San Diego, California, as scheduled on April 17. They received their travel documents at the time they boarded the ship in Chile.[3]

The travel documents were contained in a travel booklet, which included their itinerary, the contract governing the cruise (the cruisetour contract), and cancellation information. The contract began on page 11 of the booklet and stated that it was "ISSUED SUBJECT TO THE TERMS AND CONDITIONS ON THIS PAGE AND THE FOLLOWING PAGES." The contract advised the Oltmans to "READ TERMS AND CONDITIONS CAREFULLY." The contract noted that "THIS DOCUMENT IS A LEGALLY BINDING CONTRACT" and included a forum selection clause stating that any lawsuit arising out of the cruise or contract must be litigated in the United States District Court for the Western District of Washington or, if that court lacked subject matter jurisdiction, "in the courts of King County, State of Washington."

The contract also informed the Oltmans that "YOUR ATTENTION IS ESPECIALLY DIRECTED TO" various clauses in the contract, including clause A.3, which provided:

> **3.   Time Limits for Noticing Claims and Filing and Service of Lawsuits**. In any case governed by

---

[3]According to Jack, they received their travel documents either "six days prior to the cruise[ ] or at the time [they] boarded the cruise ship in Valparaiso, Chile." Construing this evidence in the light most favorable to the Oltmans, for purposes of this appeal we assume they received the travel documents at the time they boarded the ship. *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

46 United States Code Section 183b, which is a United States statute that permits any shipowner to limit the time during which a passenger may file a claim or commence suit against a shipowner, you may not maintain a lawsuit against us or the Ship for loss of life or bodily injury unless written notice of the claim is delivered to us not later than six (6) months after the day of death or injury, the lawsuit is commenced not later than one (1) year after the day of death or injury, and valid service of the lawsuit on Owner, the HAL Company or the Ship, as applicable, is made within thirty (30) days following the expiration of that one-year period. For all other claims, including but not limited to claims for loss or damage to baggage, breach of contract, illness or death or injury, not governed by 46 United States Code Section 183b, you may not maintain a lawsuit against us or the Ship, nor will we or the Ship be liable therefore, unless we are provided with written notice of claim within thirty (30) days after conclusion of the Cruise or Cruisetour, the lawsuit for such claim is commenced not later than one-year after conclusion of the Cruise or Cruisetour, and valid service of the lawsuit on Owner, the Ship or the HAL Company, as applicable, is made within thirty (30) days following the expiration of that one-year period.

While on the cruise, Jack and Bernice allege that they contracted "a severe gastrointestinal disease [that] broke out and infected many of the passengers." On April 16, 2004, the day before the ship arrived in San Diego, Jack visited the ship's infirmary for "stomach discomfort." That night, Jack "felt much better." The next morning, however, his "disposition changed drastically" and he "fell horribly ill" with "pounding in my head," "aching throughout my body," and "feelings of being hot and cold" and "nauseas with diarrhea." Jack and

Bernice continued to suffer from the "illness, its symptoms and/or side effects" for more than a year.

On March 30, 2005, shortly before expiration of the one-year time limit set by the contractual provision quoted above, the Oltmans, who were then residents of California, filed a complaint against Holland in King County Superior Court. It alleged, among other things, that Holland's negligence led to the illnesses of Jack and Bernice. The complaint also included a claim by Susan for loss of consortium.

Holland moved to dismiss that action on the ground that the forum selection clause required the action to be filed in the U.S. District Court for the Western District of Washington. On August 12, 2005, the state trial court granted that motion. The Oltmans appealed that state court dismissal, but to protect themselves, they also filed the current action in the Western District of Washington on the same day the state court action was dismissed.

That was, however, more than one year after Jack and Bernice became ill and their cruise trip ended. Holland brought a motion for summary judgment in federal district court on the ground that the federal action was filed after the one-year limitations period established by the contract. The district court granted that motion with regard to the claims brought by Jack and Bernice. The court concluded that the one-year limitations period in the cruise contract was reasonably communicated and was fundamentally fair, so it was effective and barred the claims brought by Jack and Bernice, both of whom were parties to the contract. The court denied summary judgment on Susan's loss of consortium claim, however, concluding that the contract, including its limitations clause, did not apply to Susan, as she was not a party to the contract.

Holland subsequently brought another motion for summary judgment on Susan's loss of consortium claim on a different ground, arguing that her claim must be dismissed because

Jack contracted his illness outside of United States territorial waters while federal maritime law recognizes such a claim only where the illness was contracted within territorial waters. After that motion was filed but before it was resolved, the Washington Court of Appeals, on appeal from the state trial court's dismissal, concluded that the cruise contract does apply to Susan. *See Oltman v. Holland Am. Line USA, Inc.*, 148 P.3d 1050, 1058 (Wash. Ct. App. 2006), *overruled in part by* 178 P.3d 981, 990, 995 (Wash. 2008). The district court honored that ruling by granting Holland's motion for summary judgment on Susan's claim on collateral estoppel grounds, holding that Susan's loss of consortium claim, like the claims of Jack and Bernice, was time-barred under the contract. The court did not address Holland's argument based on the contention that Susan's claim should not be recognized because Jack did not become ill within U.S. territorial waters.

The Oltmans later brought two separate motions, one each under Rules 59 and 60(b) of the Federal Rules of Civil Procedure, for the court to reconsider its summary judgment orders. They argued that the limitations period should have been equitably tolled and cited for the first time two cases in support of that argument: *Burnett v. N.Y. Cent. RR. Co.*, 380 U.S. 424 (1965), and *Berry v. Pac. Sportfishing, Inc.*, 372 F.2d 213 (9th Cir. 1967). The district court denied both motions.

On February 26, 2007, the Oltmans appealed the district court's summary judgment orders and orders denying relief under Rules 59 and 60(b). While this appeal was pending, the Washington Supreme Court reversed the state court of appeals' decision that Susan is bound by the cruise contract, held that the contract does not apply to Susan, and remanded her loss of consortium claim to the King County Superior Court. *See Oltman*, 178 P.3d at 990, 995. The state supreme court, in effect, reached the same conclusion that the district court reached when it first considered the issue. Because this case was already on appeal, though, the district court has not

been able to revisit that question, and it is left for us to take into account this subsequent development.

## II.   Discussion

The Oltmans seek reversal of the district court's summary judgment orders. They contend that the one-year limitations clause in the contract is invalid because it was not reasonably communicated and is fundamentally unfair. They further assert that, even if the limitations clause is enforceable, the limitations period should have been equitably tolled during the pendency of the state court action. Lastly, the Oltmans ask this court to remand Susan's loss of consortium claim in light of the Washington Supreme Court's recent decision.

We review a district court's decision to grant summary judgment *de novo*. *Olsen*, 363 F.3d at 922. Under Federal Rule of Civil Procedure 56, we must determine whether, viewing the evidence in the light most favorable to the non-moving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*; *see generally* Fed. R. Civ. P. 56.

### A.   *Validity of the One-Year Limitations Clause*

#### 1.   Reasonable Communicativeness Test

**[1]** This court employs the two-pronged "reasonable communicativeness test" to "determine under federal common law and maritime law when the passenger of a common carrier is contractually bound by the fine print of a passenger ticket." *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 835 (9th Cir. 2002). The first prong of the test "focuses on the physical characteristics of the ticket" and requires courts to "assess features such as size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provisions in question." *Id.* (internal quotation marks and brackets omitted). The second prong

"requires us to evaluate the circumstances surrounding the passenger's purchase and subsequent retention of the ticket/contract," including "the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket." *Id.* at 836 (quotation marks and emphasis omitted).

[2] Jack and Bernice were given a travel booklet that included their itinerary and the cruise contract. The table of contents appears before the itinerary and lists four items, including "CONTRACT (PLEASE READ)," which begins on page 11. On the third page of the contract, the passengers' cabin number is listed, under which the following appears: "ISSUED SUBJECT TO THE TERMS AND CONDITIONS ON THIS PAGE AND THE FOLLOWING PAGES. READ TERMS AND CONDITIONS CAREFULLY." The upper right side of that page states "CRUISE AND CRUISETOUR CONTRACT" and the word "CONTRACT" appears in large print on the right margin of that page. The next page is entitled "IMPORTANT NOTICE TO PASSENGERS" and states that "THIS DOCUMENT IS A LEGALLY BINDING CONTRACT" and that "YOUR ATTENTION IS ESPECIALLY DIRECTED TO CLAUSES A.1, A.3, . . . WHICH CONTAIN IMPORTANT LIMITATIONS ON YOUR RIGHT TO ASSERT CLAIMS AGAINST US." The top of the next page says "IMPORTANT TERMS AND CONDITIONS OF CONTRACT—READ CAREFULLY BEFORE ACCEPTING." The following page contains clause A.3, to which passengers are "especially directed," and is entitled "Time Limits for Noticing Claims and Filing and Service of Lawsuits." That clause clearly states that "you may not maintain a lawsuit against us or the Ship for loss of life or bodily injury unless . . . the lawsuit is commenced not later than one (1) year after the day of death or injury." Based on the physical characteristics of the contract, the terms and conditions of the one-year limitations clause are sufficiently conspicuous and meet the first prong of the test. *See Wallis*, 306 F.3d at 835-36.

**[3]** Regarding the Oltmans' "purchase and subsequent retention of the ticket/contract," *see id.* at 836 (quotation marks omitted), construing the evidence in their favor, they received the travel booklet at the time of departure because Jack purchased the tickets only thirteen days prior. Although the Oltmans may not have read the terms and conditions before departing, they were free to read them at their leisure and presented no evidence that their travel booklets were taken away from them during or after the cruise trip. Because the Oltmans had the opportunity to read the contract at any point before filing their first complaint, they had the "ability to become meaningfully informed," and the second prong of the reasonable communicativeness test is met. *See id.* (emphasis and quotation marks omitted). Accordingly, we uphold the district court's decision that the limitations clause was reasonably communicated to Jack and Bernice.

## 2.   Fundamental Fairness

**[4]** Cruisetour contract clauses are also "subject to judicial scrutiny for fundamental fairness." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). Courts focus on whether the clause was included because of "bad-faith motive" and whether the clause was "a means of discouraging cruise passengers from pursuing legitimate claims." *Id.* Here, there is no evidence that Holland included the limitations clause out of bad faith or that the clause was intended to discourage legitimate claims. Moreover, "Congress has . . . indicated that [cruisetour] contracts may legally shorten the limitations period to one year." *Dempsey v. Norwegian Cruise Line*, 972 F.2d 998, 999 (9th Cir. 1992) (per curiam).

**[5]** In determining whether the clause is fundamentally fair, this court also considers whether Holland obtained Jack's and Bernice's "accession to the . . . clause by fraud or overreaching." *Shute*, 499 U.S. at 595. The Oltmans argue that Holland "either induced Plaintiffs to enter into this contract based upon the misrepresentations (that the trip was safe and enjoy-

able) and the failure to disclose (that there had been at least 863 other cases of gastrointestinal illness aboard the [ship] . . .) or [Holland] breached this covenant." In order to establish fraudulent inducement, the Oltmans must show, among other things, that Holland knew of the falsity and intended that they rely on that falsity. *See Webster v. L. Romano Eng'g Corp.*, 34 P.2d 428, 430 (Wash. 1934). The Oltmans offer no evidence establishing whether Holland intended that they rely on the alleged misrepresentations or otherwise acted with fraud. The limitations clause is therefore fundamentally fair, and we uphold the district court's conclusion that the one-year limitations clause is valid and enforceable.

## B.    *Equitable Tolling of the Limitations Period*

The Oltmans contend that, even if the limitations clause is enforceable, the district court erred in dismissing their claims as time-barred because the limitations period should have been tolled during the pendency of the state court action. The Oltmans rely on *Burnett v. N.Y. Cent. RR. Co.*, 380 U.S. 424 (1965), and *Berry v. Pac. Sportfishing, Inc.*, 372 F.2d 213 (9th Cir. 1967).[4]

In *Burnett*, the plaintiff timely filed his action under the Federal Employers' Liability Act (FELA) in Ohio state court, where the defendant moved to dismiss based on improper venue. 380 U.S. at 424-25. Eight days after the state court dismissed the action on that ground, the plaintiff brought an identical action in federal court. *Id.* at 425. Because the federal complaint was filed after the limitations period had

---

[4]Although the Oltmans did not cite these cases in their summary judgment papers, we consider all pertinent legal authority when conducting a *de novo* review. *See Thomas v. Or. Fruit Prods. Co.*, 228 F.3d 991, 995 (9th Cir. 2000) (noting that under *de novo* review, a court "consider[s] anew both the legal and factual aspects of" a claim). Moreover, the Oltmans raised the issue of tolling in their summary judgment papers, in some fashion at least, when they urged that "this suit was a continuation of the state court action."

expired, it was dismissed as untimely. *Id.* The dismissal was affirmed on appeal, and the Supreme Court granted certiorari to determine "whether petitioner's suit in the Ohio state court tolled the FELA statute of limitations." *Id.* at 425-26.

**[6]** The Supreme Court first examined FELA's congressional intent, acknowledging that the "basic question to be answered in determining whether, under a given set of facts, a statute of limitations is to be tolled, is one 'of legislative intent whether the right shall be enforceable after the prescribed time.' " *Id.* at 426 (ellipses and internal citation omitted). The Court also observed the general policies underlying statutes of limitations and equitable tolling, noting that statutes of limitations "are primarily designed to assure fairness to defendants" and to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Id.* at 428 (quotation marks and citation omitted). The Court also stated, however, that "[t]his policy of repose . . . is frequently outweighed . . . where the interests of justice require vindication of the plaintiff's rights." *Id.* The Court observed that "[b]oth federal and state jurisdictions have recognized the unfairness of barring a plaintiff's action solely because a prior timely action is dismissed for improper venue after the applicable statute of limitations has run." *Id.* at 430, 434 ("[B]oth Congress and the States have made clear, through various procedural statutes, their desire to prevent timely actions brought in courts with improper venue from being time-barred merely because the limitation period expired while the action was in the improper court.").

**[7]** The Court ultimately concluded that the FELA statute of limitations was tolled. *Id.* at 427-28. This decision "effectuate[d] the basic congressional purposes" behind FELA. *Id.* at 427. The Court also reasoned that tolling applied because the plaintiff "did not sleep on his rights but brought an action within the statutory period in the state court." *Id.* at 429. The

Court noted that the plaintiff's failure to file in federal court was "not because he was disinterested, but solely because he felt that his state action was sufficient." *Id.* Further, the defendant "could not have relied upon the policy of repose embodied in the limitation statute, for it was aware that petitioner was actively pursuing his FELA remedy; in fact, [the defendant] appeared specially in the [state] court to file a motion for dismissal on grounds of improper venue." *Id.* at 430.

In *Berry*, which the Oltmans also cite, the plaintiff brought a claim for the wrongful death of her husband, which occurred on the high seas. 372 F.2d at 213-14. The plaintiff had filed a timely action in state court and later filed an untimely claim in federal court, after realizing that the federal court had exclusive jurisdiction over her claim. *Id.* This court applied *Burnett*'s reasoning to conclude that the limitations period was tolled during the pendency of the state action, noting that "the claim certainly had not been allowed to slumber until evidence had been lost, memories had faded, and witnesses had disappeared" because the plaintiff "had been pressing her suit" in state court. *Id.* at 215. Because the state court action "accomplished the purposes referred to in the *Burnett* case, . . . the statute of limitations was tolled." *Id.*

**[8]** Holland argues on appeal that *Burnett* and *Berry* are distinguishable because they dealt with *statutory* limitations periods, while the limitations period in this case was "set by contract." Holland asks this court to instead follow *Levick v. Steiner Transocean Ltd.*, 377 F. Supp. 2d 1251, 1258 (S.D. Fla. 2005), which concluded that "[t]he instant case is distinguishable from *Burnett* in that the limitations period at issue arises out of a *contract*." (Emphasis added). We note, however, that the court to which appeals from the Southern District of Florida are taken—the Eleventh Circuit—recently described *Levick*'s distinction between statutory and contractual limitations periods to be "dubious" and "questionable" and observed that it "had expressly rejected this distinction

in" a case that pre-dated *Levick*. *See Booth v. Carnival Corp.*, 522 F.3d 1148, 1151 n.4 (11th Cir. 2008) (noting that the Eleventh Circuit had previously rejected *Levick*'s distinction in *Bailey v. Carnival Cruise Lines, Inc.*, 774 F.2d 1577, 1579 n.3 (11th Cir. 1985)).

The Eleventh Circuit's decision in *Booth* is also pertinent because it addressed the very issue currently before us. *Booth* concerned a wrongful death action that stemmed from a fatal scuba diving accident that occurred while the decedent was a passenger on a Carnival cruise ship. 522 F.3d at 1149. The cruise contract contained clauses specifying a one-year limitations period and designating the Southern District of Florida as the appropriate forum. *Id.* The plaintiff, Victor Booth, as a personal representative of the decedent's estate, filed a timely action against Carnival in state court where it was dismissed for improper venue. *Id.* at 1149-50. More than five months after filing the state court complaint, Booth filed an identical action in the proper federal court, after the limitations period had expired. *Id.* at 1150. Carnival challenged the federal complaint as untimely, but the district court ruled that "the contractual limitation period was subject to equitable tolling." *Id.*

On appeal, the Eleventh Circuit concluded that "*Burnett*'s reasoning extends beyond the FELA context and sheds important light on the instant case." *Id.* at 1151 n.4. The court noted that, although the *Burnett* Court examined the legislative intent behind FELA, "the Court did not limit its analysis to a FELA-specific inquiry; rather, the Court articulated several general principles that supported equitable tolling under the circumstances." *Id.* at 1151 (footnote omitted). Because Booth "timely filed suit in a state court," the Eleventh Circuit concluded that "Booth in no way slept on his claims." *Id.* at 1152. Further, the court stated that, "[e]ven though Booth filed the instant federal suit after the contractual limitation period had run, Carnival was aware within the limitation period that Booth was actively pursuing his cause of action." *Id.* Finally, the court observed that the "underlying policy of repose . . .

is not violated by equitable tolling in this case" because "Booth diligently pursued his claim." *Id.* at 1152-53. The Eleventh Circuit therefore "equitably tolled the parallel federal action during the pendency of the state suit." *Id.* at 1153.

We conclude, like the *Booth* court, that *Burnett* guides our decision in the present case. *Burnett* articulated general principles concerning equitable tolling and statutes of limitations that are applicable to this case. Further, we previously noted that "[e]quitable tolling is routinely held to be proper where, as here, a claimant filed suit in a venue without jurisdiction over the claim." *Sloan v. West*, 140 F.3d 1255, 1262 (9th Cir. 1998) (applying equitable tolling to Title VII discrimination claims).

[9] Holland acknowledged that it would not be prejudiced by a decision to toll the limitations period. The Oltmans did not sleep on their claims, but brought a timely action in state court. *See Burnett*, 380 U.S. at 429. Holland was served process and notified of the claims on a timely basis. Holland was aware that the Oltmans were actively pursuing their claims and even "appeared specially in the [state] court to file a motion for dismissal on grounds of improper venue." *See id.* at 430. Like in *Burnett*, the Oltmans' failure to file suit in federal court was "not because [they were] disinterested, but solely because [they] felt that [their] state action was sufficient." *See id.* at 429. Further, as the Oltmans note, during the state court hearing on Holland's motion to dismiss the original complaint, Holland's counsel stated his understanding that the Oltmans could "refile in federal court." Had Holland removed the case to federal court rather than moved to dismiss it, the timeliness of the Oltmans' claims would have been preserved. Under the circumstances of this case, where the Oltmans' timely state court complaint was dismissed for improper forum, they then promptly filed in federal court, and Holland is not prejudiced by tolling the limitations period, we hold that the policy of repose is outweighed by the interests of justice and that the limitations period should have been

equitably tolled. *See Burnett*, 380 U.S. at 428, 434-35; *Booth*, 522 F.3d at 1152-53. We therefore reverse the district court's dismissal of the claims via summary judgment as time-barred.[5]

### C.   Loss of Consortium Claim

Even if Susan's claims were deemed subject to the one-year limitations period, those claims would similarly be entitled to equitable tolling. In light of the subsequent reversal by the state supreme court, Holland acknowledges that the decision of the state court of appeals, on which the district court expressly relied in granting summary judgment to Holland on Susan's claim, is no longer good law, such that Susan is not subject to the one-year contractual limitations period in any event. We agree. Summary judgment on that basis must be reversed.

**[10]** Holland argues that we should affirm the judgment against Susan's claim on other grounds, however, offering to us the argument that was presented to but not ruled upon by the district court, that Susan's claim cannot be recognized because Jack became ill outside of U.S. territorial waters. Because the district court did not address the merits of this argument and the Oltmans' other claims have been revived, we decline the invitation to take up Holland's argument at this time, reverse the district court's summary judgment as to Susan's loss of consortium claim based on the purportedly untimely filing, and remand that claim to the district court for further consideration.

### III.   Conclusion

Under the circumstances of this case, equitable tolling applies and the Oltmans' claims were not untimely. We there-

---

[5]Because we reverse the district court's summary judgment, we need not and do not decide whether the Oltmans were entitled to relief under Federal Rules of Civil Procedure Rules 59 or 60(b).

fore reverse the district court's orders granting summary judgment on the Oltmans' claims and remand the claims to the district court for further proceedings.

**REVERSED and REMANDED.**