*117 KISTLER, J.
The primary question in this case is whether the Due Process Clause of the Fourteenth Amendment permits Oregon to exercise general jurisdiction over an interstate railroad for claims unrelated to the railroad’s activities in this state. The trial court ruled that it could exercise general jurisdiction over the railroad and denied the railroad’s motion to dismiss plaintiffs negligence action for lack of personal jurisdiction. After the railroad petitioned for a writ of mandamus, we issued an alternative writ to the trial court, which adhered to its initial ruling. The case accordingly came to us for briefing and argument. We now hold that due process does not permit Oregon courts to exercise general jurisdiction over the railroad.
Plaintiff sustained injuries while working for Union Pacific Railroad Company “as a spiker machine operator near Minidoka, Idaho.”[1] According to plaintiffs complaint, the machine that he used to set spikes was in a “state of disrepair,” which subjected him to “excessive vibration and jarring.” Additionally, Union Pacific’s decision to reduce “the spiker machine’s customary three-[person] crew to a two-[person] crew” placed greater physical demands on plaintiff, causing or contributing to the injuries he suffered. As a result of Union Pacific’s alleged negligent maintenance of the spiker machine and its decision to reduce the number of persons operating that machine, plaintiff suffered economic and noneconomic damages totaling approximately $615,000.
Union Pacific is a Delaware corporation with its principal place of business in Omaha, Nebraska.[2] It currently *118 operates railroads in 23 states, including Oregon. It has been engaged in business in Oregon on an ongoing basis for a substantial period of time; one of its now-merged subsidiaries first began operating in Oregon in 1863.[3] Oregon also forms a significant part of Union Pacific’s business. The company owns approximately 32,000 miles of track in 23 states, with approximately 3.4 percent of those tracks in Oregon. In terms of the amount of track that Union Pacific owns, Oregon is thirteenth among the 23 states. Oregon is ninth in terms of employees and fourteenth among the 23 states in revenues generated.
Plaintiff brought this action in Oregon to recover for injuries that he sustained in Idaho. In response to Union Pacific’s motion to dismiss for lack of personal jurisdiction, plaintiff raised essentially two arguments. First, he argued that Oregon has general jurisdiction over Union Pacific under the Federal Employers’ Liability Act (FELA), 35 Stat 65, as amended, codified as 45 USC sections 51-60. Second, he argued that, apart from FELA, Oregon has general jurisdiction over Union Pacific because Union Pacific’s actions in Oregon were “so substantial and of such a nature as to justify suit against [Union Pacific] on causes of actions arising from dealings entirely distinct from those activities.” (Quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 US 915, 924, 131 S Ct 2846, 180 L Ed 2d 796 (2011).) On review, plaintiff adds a third argument. He contends that Oregon has specific jurisdiction over Union Pacific in this case. We begin with plaintiff’s second argument.[4]
*119 I. GENERAL JURISDICTION
ORCP 4 L authorizes Oregon courts to exercise personal jurisdiction over out-of-state defendants to the extent permitted by the state and federal constitutions. Union Pacific identifies no state constitutional limit on the trial court’s authority to hear plaintiffs claims, and the question accordingly becomes whether due process permits Oregon to exercise general jurisdiction over Union Pacific. In answering that question, we focus initially on the Court’s discussion of general jurisdiction in Daimler AG v. Bauman, 571 US_, 134 S Ct 746, 187 L Ed 2d 624 (2014).
The Court held in Daimler that California courts could not exercise general jurisdiction over Daimler AG, a German public stock company, to hear claims that were unrelated to that state.[5] 134 S Ct at 762. We discuss Daimler in greater detail below. Essentially, however, the Court explained that a corporation will be “at home” in a state and thus subject to general jurisdiction in two paradigmatic places: the corporation’s place of incorporation and its principal place of business. Id. at 760. Although the Court did not foreclose the possibility that a corporation could be “at home” in other places, it identified a limited set of “exceptional” circumstances that will provide comparable contacts. Id. at 761 n 19. In doing so, the Court rejected the argument that plaintiff raises here—that a substantial and continuous business presence within a state is, in and of itself, sufficient to give rise to general jurisdiction over an out-of-state corporate defendant. Id. at 761-62.
In reaching those conclusions, the Court began by tracing the development of specific and general jurisdiction. The Court explained that both doctrines find their roots in International Shoe Co. v. Washington, 326 US 310, 66 S Ct 154, 90 L Ed 95 (1945). The plaintiffs claim in International Shoe arose out of the defendant’s contacts with the forum *120 state, and the question in that case was whether those in-state contacts were sufficient to give the forum state personal jurisdiction over the defendant. That type of personal jurisdiction, now called specific jurisdiction, turns on “‘the relationship among the defendant, the forum, and the litigation.’” Daimler, 134 S Ct at 754 (quoting Shaffer v. Heitner, 433 US 186, 204, 97 S Ct 2569, 53 L Ed 2d 683 (1977)). That is, specific jurisdiction “depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State’s regulation.” Goodyear, 564 US at 919 (alteration in original; internal quotation marks omitted).
International Shoe also recognized a related but separate category of personal jurisdiction, which has been labeled general jurisdiction. More specifically, International Shoe recognized that a foreign corporation’s “continuous corporate operations within a state [may be] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.” 326 US at 318. The Court did not have occasion in International Shoe to determine how substantial an out-of-state corporation’s activities within the forum state must be before the forum could exercise general jurisdiction over the corporation. International Shoe, as well as most of the Court’s subsequent personal jurisdiction cases, have focused instead on specific jurisdiction.
After International Shoe and before Daimler, only three of the Court’s cases had considered when a foreign corporation’s contacts with a forum will be sufficient to permit the forum state to exercise general jurisdiction over it. One case held that a Philippine mining company that temporarily had relocated to Ohio during the Second World War was subject to general jurisdiction in Ohio. See Daimler, 134 S Ct at 756 (describing Perkins v. Benguet Mining Co., 342 US 437, 72 S Ct 413, 96 L Ed 485 (1952)). As the Court explained in Daimler, “[g]iven the wartime circumstances, Ohio could be considered a surrogate for the [mining company’s] place of incorporation or head office.” Id. at 756 n 8 (internal quotation marks omitted); see also Goodyear, 564 *121 US at 928 (describing Perkins the same way).[6] Each of the other two cases concluded that the out-of-state defendant’s occasional contacts with the forum state were insufficient to give that state general jurisdiction. Goodyear, 564 US at 929;[7] Helicopteros Nacionales de Colombia v. Hall, 466 US 408, 104 S Ct 1868, 80 L Ed 2d 404 (1984).[8]
The Court’s decision in Goodyear has proved notable not so much for its holding but for its explanation of when a corporation’s activities within a forum state will be sufficient to give rise to general jurisdiction. The Court explained in Goodyear that “[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so ‘continuous and systematic’ as to render them essentially at home in the forum State.” 564 US at 919. The Court did not define with any specificity in Goodyear when a foreign corporation will be “essentially at home” in the forum state; the contacts in that case were so few that further definition was unnecessary.[9] Rather, the task of defining when a foreign corporation will be “essentially at home” fell to Daimler.
*122 On that issue, there was no dispute in Daimler that the German corporation’s own activities in California were insufficient to permit that state to exercise general jurisdiction over it. Rather, the plaintiffs’ theory (and the Ninth Circuit’s holding) turned on the proposition that Mercedes Benz USA (MBUSA), Daimler’s United States subsidiary, was Daimler’s agent, that MBUSA’s in-state activities were attributable to Daimler, and that MBUSA was subject to general jurisdiction in California—a proposition that was undisputed in that case.
In considering that theory, the Court questioned whether, even if MBUSA were Daimler’s agent, its activities were attributable to Daimler. Id. at 759 (holding out the possibility that MBUSA’s activities in California would be attributable to Daimler only if MBUSA were Daimler’s alter ego). In a similar vein, the Court questioned whether an agent’s contacts with the forum would be attributable to the principal for the purpose of establishing general jurisdiction even though those contacts would be attributable to the principal for the purpose of establishing specific jurisdiction. Id. Finally, the Court questioned whether California could exercise general jurisdiction over MBUSA. See id. at 758.
The Court concluded, however, that “[e]ven if we were to assume that MBUSA is at home in California, and further to assume MBUSA’s contacts are imputable to Daimler, there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler’s slim contacts with the state hardly render it at home there.” Id. at 760. In reaching that conclusion, the Court identified two paradigmatic places where a corporation will be “at home”: “the place of incorporation and principal place of business.” Id. The Court did not “foreclose the possibility that in an exceptional case, see, e.g., Perkins” a corporation could be at home in some place other than its place of incorporation and its principal place of business. Id. at 761 n 19. However, the Court rejected the plaintiffs’ argument that a corporation will be at home “in every State in which a corporation engages in a substantial, continuous, and systematic course of business”—an argument that the Court described *123 as “unacceptably grasping.” Id. at 761 (internal quotation marks omitted).[10]
The Court explained why MBUSA’s activities in California—even if they were imputed to Daimler and even if they were sufficient to give rise to general jurisdiction over MBUSA—were not sufficient to establish general jurisdiction over Daimler:
“[T]he general jurisdiction inquiry does not ‘focufs] solely on the magnitude of the defendant’s in-state contacts.’ * * * General jurisdiction instead calls for an appraisal of a corporation’s activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, ‘at home’ would be synonymous with ‘doing business’ tests framed before specific jurisdiction evolved in the United States. *** Nothing in International Shoe and its progeny suggests that ‘a particular quantum of local activity’ should give a State authority over a ‘far larger quantum of . . . activity’ having no connection to any in-state activity.”
Id. at 762 n 20 (citation omitted; bracket in original). The Court reasoned that, if MBUSA’s California activities gave that state general jurisdiction over Daimler, then every other state in which MBUSA’s sales were sizeable could also assert general jurisdiction over Daimler—a result that the Court rejected as an “exorbitant exercis[e] of all purpose jurisdiction.” Id. at 761.
Given Daimler, we conclude that Oregon may not exercise general jurisdiction over Union Pacific. There is no dispute that Union Pacific has engaged in a “substantial, continuous, and systematic course of business” in Oregon. However, Union Pacific’s activities in Oregon, while substantial, are only a small part of its larger business activities in 23 states. To paraphrase the Court’s reasoning in Daimler, if Oregon can exercise general jurisdiction over Union Pacific because that company’s activities in this state *124 are substantial and continuous, then every state in which Union Pacific has engaged in similar activities can assert general jurisdiction over it, and the Court was clear that a rule of decision that results in multiple jurisdictions simultaneously asserting general jurisdiction over an out-of-state defendant is at odds with the Due Process Clause.[11]
Plaintiff, however, advances three interrelated reasons why Daimler does not foreclose Oregon from exercising general jurisdiction over Union Pacific. He contends initially that the touchstone of International Shoe is “fairness” and that there is nothing unfair in subjecting Union Pacific to general jurisdiction in a state, such as Oregon, where it has a substantial and continuous business presence. Second, and perhaps in support of the first point, plaintiff notes that Union Pacific employs 1,700 persons in Oregon, has an annual Oregon payroll of $144.6 million, owns and operates almost 1,100 miles of track throughout the state, and generates over $645 million annually in revenue from its Oregon operations. Finally, plaintiff notes that this case is factually distinguishable from Daimler. It does not require attributing the activities of an in-state agent to a foreign corporation to hear a claim that arose in another country, as in Daimler. Rather, this case focuses on Union Pacific’s activities in Oregon to determine whether that company is subject to general jurisdiction in this state for an injury that resulted from Union Pacific’s alleged negligence in a neighboring state.
While we appreciate the distinctions that plaintiff identifies, we are not persuaded that Daimler can be distinguished so easily. We agree with plaintiff that, in *125 International Shoe, the Court invoked fair play as a touchstone of due process. However, since that time, the Court has refined and clarified the rules that guide our determination of when due process permits states to exercise general jurisdiction over out-of-state defendants. We cannot rely on the general invocation of fair play in International Shoe to undo the more specific rules for determining general jurisdiction that the Court announced in Daimler.[12]
Plaintiffs related point—that Union Pacific is engaged in substantial and continuous business activities in Oregon—does not provide a viable basis for distinguishing Daimler. In Daimler, the Court explicitly assumed that MBUSA’s activities in California could be imputed to Daimler. Those activities included “the presence of multiple offices, the direct distribution of thousands of products accounting for billions of dollars in sales, and continuous interaction with customers” in California. Id. at 764 (Sotomayor, J., concurring in the judgment). As the Court explained, however, in response to the concurring opinion, “the general jurisdiction inquiry does not focu[s] solely on the magnitude of the defendant’s in-state contacts. * * * General jurisdiction instead calls for an appraisal of a corporation’s activities in their entirety.” Id. at 762 n 20. Similarly, in this case, while Union Pacific’s activities in Oregon are substantial, they form only a small part of its activities in the 23 states in which it operates. Viewed through the lens that Daimler provided, those contacts are not sufficient to confer general jurisdiction over Union Pacific. If they were, most (if not all) of the states in which Union Pacific operates could exercise general jurisdiction over it. However, as the Court explained, due process does not permit such an “exorbitant exercise” of general jurisdiction.
Finally, plaintiff argues that this case is factually distinguishable from both Daimler and Goodyear. To be sure, there are differences between the two cases. Daimler involved an international corporation, whose ties to *126 California depended on attributing its subsidiary’s in-state activities to it. Moreover, the plaintiffs’ claims in Daimler arose outside of the United States while plaintiffs claims in this case arose in a neighboring state. Perhaps the Court could have relied on those facts in holding that California lacked general jurisdiction over Daimler. It did not do so, however. Rather, the Court expressly assumed that MBUSA’s activities in California were attributable to Daimler but found MBUSA’s activities in California insufficient in the context of Daimler’s larger operations. Nor does the international character of the issues in Daimler provide a basis for distinguishing that decision. The Court expressly declined to adopt the rationale advanced by Justice Sotomayor’s opinion concurring in the judgment, which turned on the lack of a connection between California and a claim by Argentinean plaintiffs against a German corporation. Id. at 762 n 20.[13] However narrowly the Court might have written Daimler, we are not persuaded that the decision, as written, can be fairly distinguished.
II. SECTION 56 OF FELA
Plaintiff also relies on section 56 of FELA. Congress enacted FELA in 1908 to provide a federal cause of action for injured railroad workers. 35 Stat 65.[14] As initially enacted, FELA left venue to the general federal venue statute, which “fixed the venue of suits in the United States courts, based in whole or in part * * * in districts of which the defendant was an inhabitant.” Baltimore & Ohio R. Co. v. Kepner, 314 US 44, 49, 62 S Ct 6, 86 L Ed 28 (1941). It quickly became apparent, however, that it was an “injustice to an injured employee” to permit the employee to bring an action only in the district where the defendant railroad was an inhabitant. *127 Id. Accordingly, in 1910, Congress added what is now codified as section 56 of FELA. That section provided and still provides:
“Under this chapter an action may be brought in a [District Court of the United States], in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States, and no case arising under this Act and brought in any state court of competent jurisdiction shall be removed lo any court of the United States.”
36 Stat 291; see 45 USC § 56.
Relying on Kepner and Miles v. Illinois Central R. Co., 315 US 698, 62 S Ct 827, 86 L Ed 1129 (1942), plaintiff argues that the Supreme Court “has consistently upheld the jurisdiction of courts in FELA cases even though those [cases were brought] in states different from the location of an injury, or the headquarters or place of incorporation of the defendant railroad.” In plaintiffs view, the Court has “consistently done so because of the ‘exceptional’ nature of interstate railroads,” a proposition that plaintiff sees as bringing FELA cases within the class of “exceptional” cases that, under footnote 19 in Daimler, will give rise to general jurisdiction in a forum other than a corporate defendant’s place of incorporation and primary place of business.
The difficulty with plaintiffs argument is that section 56 of FELA addresses venue and subject matter jurisdiction. It does not address personal jurisdiction. As explained below, the FELA cases on which plaintiff relies apparently assumed (no defendant raised the issue in those cases) that personal jurisdiction over the railroads existed because the railroads were “doing business” in the jurisdiction in which they were sued. That basis for asserting personal jurisdiction over out-of-state corporate defendants predated Kepner and Miles, was not unique to railroads but applied to all out-of-state corporate defendants, and did not survive Daimler. With that preface, we turn to the terms of section 56.
*128 Section 56 consists of two sentences. The first sentence is a venue provision that defines the venues in which FELA claims may be brought in federal district courts. See Kepner, 314 US at 50-51 (describing that sentence as conferring venue); Sen R 432 (1910), printed in 45 Cong Rec 4040, 4041 (stating that the first sentence in the 1910 amendment pertains to “the venue of such an action”). That sentence provides that claims under FELA can be brought in the federal district courts in three places: the district where the defendant resides, the district where the cause of action arose, or the district where the defendant was doing business when the action was commenced. Kepner, 314 US at 50. As the Court recognized in Kepner, the first sentence of section 56 does not confer personal jurisdiction over out-of-state corporate defendants but instead provides for expanded venue “‘if there is jurisdiction.’” Id. at 51 (quoting Hoffman v. Foraker, 274 US 21, 23, 47 S Ct 485, 71 L Ed 905 (1927)); accord Missouri ex rel Southern Railway Co. v. Mayfield, 340 US 1, 3, 71 S Ct 1, 95 L Ed 3 (1950) (noting personal jurisdiction as a prerequisite to the application of section 56).
Plaintiff fares no better under the second sentence in section 56. That sentence confirms that state courts have concurrent subject matter jurisdiction over federal FELA claims. Second Employers’ Liability Cases, 223 US 1, 56, 32 S Ct 169, 56 L Ed 327 (1912). The Court explained in Second Employers’ Liability Cases that, when Congress enacted FELA in 1908, the general jurisdictional provision giving state courts concurrent subject matter jurisdiction over federal claims was sufficient, without more, to establish the state courts’ jurisdiction over those claims. Id. The second sentence of section 56 was added to emphasize the existence of concurrent subject matter jurisdiction but did not itself confer it. Id. That sentence was intended to confirm the authority (and duty) of state courts to hear federal FELA claims “when [the state court’s] ordinary jurisdiction as prescribed by its local laws is appropriate to the occasion and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of civil recovery.” Id. at 56-57; accord Testa v. Katt, 330 US 386, 394, 67 S Ct 810, 91 L Ed 967 (1947) (holding that state courts generally may not refuse enforcement of federal claims if state courts would *129 enforce the same type of state-law claims).[15] Confirming the state courts’ concurrent subject matter jurisdiction over federal claims is not the same thing as conferring personal jurisdiction over out-of-state corporate defendants.
Nothing in section 56 purports to confer personal jurisdiction over out-of-state corporate defendants on state or federal courts. It is true, as plaintiff argues, that in Kepner the Court upheld the ability of an Ohio plaintiff injured in that state to bring a FELA claim in a New York federal district court when the basis for filing an action in that forum was that the defendant railroad was doing business there. 314 US at 48. The only issue, however, raised in Kepner was whether the broad venue provision in the first sentence of section 56 precluded the railroad from asserting a forum non conveniens defense. Id. at 51. The railroad did not argue and the Court did not address whether a New York court could assert personal jurisdiction over a nonresident corporation for injuries that occurred in another state. A similar pattern occurred in Miles, on which plaintiff also relies.
Plainitff concludes from Kepner and Miles that section 56 of FELA gave the courts in those cases personal jurisdiction over the out-of-state corporate defendants. Not only is that conclusion difficult to draw from the Court’s failure to address personal jurisdiction in those cases, but it is also at odds with the history that preceded those cases. Cf. New York Trust Co. v. Eisner, 256 US 345, 349, 41 S Ct 506, 65 L Ed 963 (1921) (noting that “a page of history is worth a volume of logic”). As early as 1882, the Court held that a state could assert personal jurisdiction over an out-of-state corporate defendant if the corporation was “doing business” in the state through its agent and the state served the corporate defendant’s agent. St. Clair v. Cox, 106 US 350, 355-56, 1 S Ct 354, 27 L Ed 222 (1882). The Court reached *130 a similar conclusion in International Harvester v. Kentucky, 234 US 579, 34 S Ct 944, 58 L Ed 1479 (1914), even though the corporate defendant in that case had structured its business practices to avoid complying with a state law requiring that an agent be appointed for service of process.[16]
In Davis v. Farmers Co-Operative Co., 262 US 312, 316, 43 S Ct 556, 67 L Ed 996 (1923), the Court cited International Harvester for the proposition that the forum state had personal jurisdiction over the defendant railroad because it was doing business there.[17] In light of Davis, International Harvester, and St. Clair, it should come as no surprise that the defendant railroads in Kepner and Miles did not question whether the forum had personal jurisdiction over them. In both cases, those railroads were doing business in the states in which the FELA actions were brought. Rather, the only question that the defendant railroads raised was whether venue could be transferred to a more convenient forum.[18]
*131 The most that plaintiff can extract from Kepner and Miles is that the parties in those cases implicitly assumed that the forum states had jurisdiction because the railroads were “doing business” there. And the parties’ implicit assumptions will advance plaintiffs jurisdictional arguments only if “doing business” in a forum is enough, without more, to assert general jurisdiction over an out-of-state corporate defendant. As Daimler makes clear, however, it is not. As explained above, the Court held in Daimler that the fact that an out-of-state corporation “engages in a substantial, continuous, and systematic course of business” in a state is not sufficient, in and of itself, to give that state general jurisdiction over the corporation. Daimler also rejected the proposition that “at home,” as it used that phrase, is “synonymous with ‘doing business’ tests framed before specific jurisdiction evolved in the United States.” 134 S Ct at 762 n 20. And the Daimler Court observed that, although Perkins had relied on two cases upholding “the exercise of general jurisdiction based on the presence of a local office, which signaled that the corporation was ‘doing business’ in the forum,” those “doing business” cases “should not attract heavy reliance today.” Id. at 761 n 18.
As we read Daimler, it concluded that the recognition of specific jurisdiction in International Shoe foreclosed reliance on older cases finding general jurisdiction based solely on “doing business” within a forum.[19] We cannot follow *132 the Court’s decision in Daimler and give continued effect to the “doing business” cases that plaintiff implicitly urges us to follow, nor can we find in the terms of FELA, the cases interpreting it, or the history that preceded.it a basis for, saying that cases brought against railroads under that statute constitute an “exceptional” case that, like Perkins, will permit a court to exercise general jurisdiction over a corporate defendant in a forum other than its state of incorporation or principal place of business. We accordingly reach a different conclusion from the Montana Supreme Court, which relied on earlier “doing business” cases in upholding general jurisdiction over a railroad. See Tyrrell v. BNSF Railway Co., 373 P3d 1 (Mont 2016), cert granted,_US _(2017). We agree instead with the majority of courts that have held that the fact that a corporation is doing business within a state is not sufficient in and of itself to give that state general jurisdiction over the corporation. See, e.g., Brown v. Lockheed Martin Corp., 814 F3d 619 (2d Cir 2016); Kipp v. Ski Enterprise Corp., 783 F3d 695, 698-99 (7th Cir 2015); Martinez v. Aero Caribbean, 764 F3d 1062, 1070 (9th Cir 2014).
III. SPECIFIC JURISDICTION
Plaintiff argues that we can affirm the trial court’s ruling on an alternative ground—that the relationship among Union Pacific, the forum, and this litigation are sufficient to give Oregon specific jurisdiction over Union Pacific. See Outdoor Media Dimensions Inc. v. State of Oregon, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining when an appellate court can affirm the lower court’s ruling under the “right for the wrong reason” doctrine).[20] Plaintiff did not raise this issue below, and, as he notes, “the factual record *133 in regard to specific jurisdiction is not fully developed.” We agree. The only Oregon-specific fact before the trial court on Union Pacific’s motion to dismiss was plaintiffs residence. The complaint alleged that, at all material times, plaintiff “was a resident of the City of Albany, State of Oregon.” Plaintiff does not identify any other evidence in the record that would provide a basis for finding specific jurisdiction over his claim against Union Pacific, nor are we aware of any. Without more, we cannot say that the trial court had specific jurisdiction over Union Pacific.[21] See Robinson v. Harley-Davidson Motor Co., 354 Or 572, 574, 316 P3d 287 (2013) (holding that Oregon courts could not exercise specific jurisdiction over a claim brought by an Oregon resident for injuries sustained elsewhere because “this litigation did not arise out of or relate to [the] defendant’s activities in Oregon”).
Peremptory writ to issue.

 This mandamus proceeding arises out of plaintiffs negligence action against Union Pacific. We take the facts from the record that was developed in the underlying action on Union Pacific’s motion to dismiss for lack of personal jurisdiction. See Willemsen v. Invacare Corp., 352 Or 191, 195 n 2, 282 P3d 867 (2012) (explaining that the record on a motion to dismiss for lack of personal jurisdiction includes the complaint, affidavits, and other evidence that the parties submitted on the motion). We assume, for the purposes of this proceeding, that the facts alleged in plaintiffs complaint are true and construe any disputed facts consistently with the trial court’s ruling. See id.

 Union Pacific’s corporate offices are located in Omaha, as are its “rail traffic control headquarters.”

 The Oregon Steam Navigation Co. began in 1863 as a portage railroad to carry steamship travelers around rapids and falls on the Columbia River. It merged with Oregon Railway & Navigation Co. (OR&N), which became part of a railroad system that Union Pacific leased and that connected to a Union Pacific subsidiary, Oregon Short Line (OSL). Although OR&N and OSL operated as separate corporate entities well into the twentieth century, they merged with Union Pacific in 1987.

 Ordinarily, we would begin with the federal statutory issue that plaintiff raises before reaching any constitutional limitation on exercising jurisdiction over Union Pacific. However, plaintiff has not explained how Congress can authorize states to exercise jurisdiction that due process forbids. Moreover, as explained below, the section of FELA on which plaintiff relies does not purport to confer authority on state or federal courts to exercise personal jurisdiction over out-of-state corporate defendants. We accordingly begin with plaintiff’s constitutional claim and then turn to his reliance on the federal statute.

 In Daimler, employees of Daimler’s Argentinean subsidiary sued Daimler in federal district court in California, claiming that Daimler’s Argentinean subsidiary had conspired with the security police in that country to kidnap, torture, and kill the subsidiary’s employees. Because the plaintiffs’ claims had no connection to California, the plaintiffs had to establish that Daimler’s presence in California was sufficient to give that state general jurisdiction over it.

 In Daimler, Justice Sotomayor read Perkins for the proposition that the displaced company had a substantial presence in Ohio but also maintained extensive operations elsewhere. 134 S Ct at 769-70 n 8 (opinion concurring in the judgment). She accordingly disagreed that Ohio was a surrogate for the company’s head office. Id. Whatever the merits of that reading of Perkins, the Court’s interpretation of Perkins in Goodyear and Daimler controls our view of that case.

 In Goodyear, the Court held that the North Carolina courts lacked general jurisdiction over the European subsidiaries of a United States parent to hear claims against those subsidiaries arising out of an accident in France. The subsidiaries had no presence in North Carolina, and the tires that they manufactured were sold primarily in European and Asian markets. 564 US at 920-21. Only a small percentage of the subsidiaries’ tires were distributed in North Carolina by other Goodyear affiliates. Id.

 In Helicopteros, the Court held that Texas lacked general jurisdiction over a Colombian corporation when the corporation’s contacts with Texas were confined to “sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from [a Texas-based helicopter company] for substantial sums; and sending personnel to ITexas] for training.” Helicopteros, 466 US at 416.

 In Goodyear, the Court explained that a corporation would be “at home” in a state if the corporation were comparable to a domestic enterprise in that state, but it did not provide further guidance. See 564 US at 924.

 The Court recognized that a corporation’s “continuous and systematic” activities in the forum state will give rise to specific jurisdiction when they “also give rise to the liabilities sued on.” 134 S Ct at 761 (quoting International Shoe, 326 US at 317). However, as noted, it rejected the plaintiff’s argument that systematic and continuous activities in the forum state were sufficient to give rise to general jurisdiction in every state in which those activities occurred.

 The Court identified primarily two reasons why “only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction.” Daimler, 134 S Ct at 760. First, the Court explained that, following International Shoe, specific jurisdiction has become (and should be) the predominant means by which a state may assert jurisdiction over an out-of-state defendant. General jurisdiction should play only a subsidiary role. Id. at 757-58 & n 9. Second, the rules for determining general jurisdiction should provide clear guides to out-of-state defendants, thus “permit [ting] out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.” Id. at 761-62 (internal quotation marks omitted). The rules that the Court announced for determining general jurisdiction further those goals.

 Plaintiff has not explained why he could not have brought an action in Idaho where the injury occurred or why it would be unfair, as International Shoe used that concept, to limit personal jurisdiction over Union Pacific to the state in which it allegedly caused the injury and those states in which Union Pacific is incorporated and maintains its principal place of business.

 At the end of its opinion, after the majority had concluded that the Ninth Circuit erred in holding that California courts could exercise general jurisdiction over Daimler, the majority noted that the “transnational context of this dispute bears attention,” but that context merely confirmed the Court’s holding. 134 S Ct at 762. It did not control it. Had it done so, the Court would have agreed with Justice Sotomayor’s opinion concurring in the judgment.

 As enacted in 1908, FELA focused on substantive issues, such as the standard of care and who can recover in the event of the employee’s death; it made railroads liable for their negligence, eliminated the defenses of contributory negligence and assumption of risk, and replaced those defenses with comparative fault. 35 Stat 65-66.

 In explaining the 1910 amendment, Senator Borah stated that, in his view, the sentence was not necessary because the general jurisdictional provision applied. 45 Cong Rec 4034-35 (remarks of Sen Borah). He noted, however, that the Supreme Court of Connecticut “ha[d] refused to take jurisdiction of this class of [FELA] cases, holding that it was the evident intent of Congress to confine this class of cases to the jurisdiction of the federal court.” Id. at 4035. The second sentence was added to make clear that state courts have concurrent subject matter jurisdiction to hear FELA cases. Id.

 There are two related but separate types of “doing business” cases. One arose as a result of state statutes that required out-of-state corporations doing business within a state to appoint a registered agent for the service of process. St. Clair, 106 US at 355-56. Although the Court initially stated that personal jurisdiction was limited to the corporation’s in-state activities, it later recognized that such statutes could provide for general jurisdiction. See Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co., 243 US 93, 95-96, 37 S Ct 344, 61 L Ed 610 (1917). The other class of cases arose in the absence of such statutes and recognized that a forum state could assert personal jurisdiction over corporations doing business within the state as long as a corporate agent was served with process in the state. See International Harvester, 234 US at 585-86 (discussing amount of business activity within a state necessary under the Due Process Clause to justify personal jurisdiction). In this case, plaintiff relies on the latter line of cases, not the former.

 Because the courts in which railroads were “doing business” had personal jurisdiction over them, the issue in FELA cases shifted from personal jurisdiction under the Due Process Clause to whether asserting a FELA claim in an unrelated jurisdiction placed an undue burden on interstate commerce in violation of the Commerce Clause. See Davis, 262 US at 317. Davis held that it did. Id. After a series of cases that initially followed but later limited Davis, the Court finally confined Davis to its “particular facts” in Kepner. See Kepner, 314 US at 51 n 11.

 Plaintiff also relies on a statement that Senator Borah made in introducing the 1910 amendment. After explaining that the first sentence of the amendment “has reference to the venue” of a FELA action, he added that the amendment “enables the plaintiff to find the corporation at any point or place or State where it is actually carrying on business, and there lodge his action, if he chooses to do so.” 45 Cong Rec 4034 (1910). Plaintiff’s reliance on that statement is misplaced for three reasons. First, Senator Borah specifically focused on venue, not personal *131 jurisdiction. Second, the “doing business” cases provided for personal jurisdiction “where [the railroad was] actually carrying on business.” Id. Put differently, personal jurisdiction where the railroad was actually carrying on business was a premise not a consequence of the amendment. Third, even if Congress intended to confer personal jurisdiction on state courts where it would not otherwise exist, plaintiff never explains how Congress can do so in violation of the Due Process Clause.

 As noted, plaintiff does not argue that Oregon courts can assert personal jurisdiction over Union Pacific based on Oregon’s statute requiring out-of-state corporations doing business within this state to appoint agents for service of process. See ORS 60.731. We accordingly do not decide in this case whether Oregon’s statute purports to confer personal jurisdiction over out-of-state defendants; whether, if it does, it purports to confer jurisdiction only over claims that arise out of a corporation’s activities within this state; or whether, if it purports to confer general jurisdiction, Oregon could do so consistently with the federal constitution. It is sufficient in this case to hold that the quantum of business activity necessary to constitute “doing business” under cases such as International Harvester is no longer sufficient, in and of itself, to confer general jurisdiction under Daimler.

 In Outdoor Media Dimensions, the court explained that an appellate court can affirm a lower court’s ruling on a different ground when “certain conditions are met.” Among other things,
“if the question presented is not purely one of law, then the evidentiary record must be sufficient to support the proffered alternative basis for affirmance. That requires: (1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court’s ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below.”
331 Or at 659-60.

 We express no opinion on whether plaintiffs failure to develop the issue of specific jurisdiction in the trial court forecloses him from doing so when this case goes hack to the trial court. The parties have not briefed that procedural issue in this court, and we leave that issue initially to the trial court.