494 October 19, 2023 No. 30

## IN THE SUPREME COURT OF THE STATE OF OREGON

Thomas HILL,
*Plaintiff-Relator,*

*v.*

Ronald M. JOHNSON,
*Defendant-Adverse Party.*
(CC 20CV31237) (SC S069766)

Original proceeding in mandamus.*

Argued and submitted May 11, 2023.

Ryan D. Harris, Vial Fotheringham LLP, Lake Oswego, argued the cause and filed the briefs for plaintiff-relator. Also on the briefs was Matthew A. Martin.

Nathan G. Steele, The Steele Law Firm, P.C., Bend, argued the cause and filed the brief for defendant-adverse party.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, Bushong, James, and Masih, Justices.**

GARRETT, J.

A peremptory writ of mandamus shall issue.

–––––––––––––––

 * On petition for writ of mandamus from an order of Deschutes County Circuit Court, Michelle A. McIver, Judge.

 ** Balmer, Senior Judge, Justice pro tempore, participated in oral argument, but did not participate in the consideration or decision of this case.

**GARRETT, J.**

An exception to the attorney-client privilege applies to communications that are "relevant to an issue of breach of duty" between an attorney and client. OEC 503(4)(c). This mandamus proceeding requires us to define one boundary of that breach-of-duty exception: whether the exception applies only to communications between the parties directly involved in the alleged breach—that is, communications between the client and the allegedly breaching attorney (or, alternatively, communications between the attorney and the allegedly breaching client). Based on the text, context, and legislative history of OEC 503(4)(c), we conclude that the breach-of-duty exception applies only to communications between the parties directly involved in the alleged breach. The trial court therefore erred when it applied the breach-of-duty exception to communications beyond that scope.

## I.   BACKGROUND

We take the facts from the record in the trial court proceedings. *Barrett v. Union Pacific Railroad Co.*, 361 Or 115, 117 n 1, 390 P3d 1031 (2017). The matter underlying this mandamus proceeding is a legal malpractice action brought by Hill against his former attorney, Johnson, who had represented Hill in a marriage dissolution proceeding. Hill alleges that, at the conclusion of his dissolution proceeding, Johnson signed a stipulated supplemental judgment on his behalf without his knowledge or permission. According to Hill, the stipulated supplemental judgment provided Hill's ex-wife certain proceeds out of his pension plan that exceeded the amount to which he had previously agreed.

Hill alleges that, months later, when he learned that the stipulated supplemental judgment included the disputed pension proceeds, he asked Johnson to correct it. When that was not done to Hill's satisfaction, he hired new trial counsel, Fowler, to repair Johnson's alleged error. Fowler moved the trial court to invalidate the supplemental judgment. The trial court denied that motion. Hill then hired appellate counsel, Daniels, to repair Johnson's alleged error by challenging the trial court's order on appeal.

Based on those factual allegations, Hill brought the underlying malpractice action alleging that Johnson owed him a duty to exercise the ordinary skill and care exhibited by Oregon attorneys and that Johnson breached that duty both by signing the stipulated supplemental judgment without his knowledge or permission and by failing to take adequate steps to remediate that error. Hill seeks damages for the disputed pension proceeds awarded to his former spouse in the supplemental judgment and for the fees that Hill paid to the attorneys, Fowler and Daniels, whom he hired to repair Johnson's alleged error.

In response to Hill's complaint, Johnson issued Hill discovery requests seeking the production of documents. Those requests sought, among other things, the complete files of Fowler and Daniels related to their representations of Hill in the dissolution matter as well as documents related to any other attorney whom Hill had contacted to represent him in the dissolution proceeding, regardless of whether Hill had retained the contacted attorney.

Hill produced billing records from Fowler and Daniels but refused to produce other documents from their files, asserting the attorney-client privilege under OEC 503(2). Johnson disputed Hill's reliance on the attorney-client privilege and moved to compel the production of the documents that Hill had withheld. Johnson argued to the trial court that the attorney-client privilege does not apply in legal malpractice cases. Citing OEC 503(4)(c), the breach-of-duty exception, Johnson argued that, because Hill's complaint alleged that Johnson had breached a duty owed to Hill, communications between Hill and Fowler and Daniels that were relevant to the alleged breach by Johnson should be produced.

The trial court agreed with Johnson, ruling that the breach-of-duty allegations precluded Hill from relying on the attorney-client privilege to withhold documents responsive to Johnson's request for production.[1] Hill petitioned this

_____

[1] In ordering Hill to produce documents responsive to those requests, however, the trial court expressly relied on the breach-of-duty exception with respect to only two of the three requests at issue: the request for repair trial counsel's file (Request for Production (RFP) 10) and the request for repair appellate counsel's

court for a writ of mandamus. This court issued an alternative writ of mandamus directing the trial court to either vacate its order or show cause why the trial court should not do so. The trial court declined to vacate its order. As a result, the parties proceeded to argument in this court.

## II. ANALYSIS

Johnson argues, as a preliminary matter, that this case is outside our mandamus jurisdiction for two reasons. First, Johnson notes that the trial court issued a protective order prohibiting him from disclosing Hill's document productions outside the malpractice proceeding, thus limiting any harm to Hill that might otherwise result from the production of the documents at issue.

Johnson's argument misconceives the grounds for mandamus jurisdiction when a party asserts that a trial court's order erroneously requires disclosure of a privileged communication. Mandamus jurisdiction does not turn on the extent of harm, but, rather, on whether the law otherwise provides an adequate remedy for that harm. Mandamus jurisdiction does not lie when a party has "a plain, speedy and adequate remedy in the ordinary course of the law." ORS 34.110. A direct appeal is generally a plain, speedy, and adequate remedy. *See State ex rel Automotive Emporium v. Murchison*, 289 Or 265, 269, 611 P2d 1169, *reh'g den*, 289 Or 673, 616 P2d 496 (1980) ("Direct appeal is an adequate remedy unless the relator would suffer a special loss beyond the burden of litigation by being forced to trial." (Footnote

---

file (RFP 45). The trial court did not cite any authority in ordering Hill to produce documents related to his contact with prospective repair counsel (RFP 26).

Nevertheless, Hill had asserted the attorney-client privilege in response to all three requests for production in dispute. And Johnson had argued that the breach-of-duty exception applied to all documents over which Hill had asserted privilege. The trial court did not identify other grounds for rejecting Hill's assertion of privilege with respect to RFP 26. As a result, it is unclear whether the trial court rejected Hill's assertion of privilege as to RFP 26 based on the breach-of-duty exception or on some other ground.

Our decision addresses only the scope of the breach-of-duty exception. Our decision does not address whether Hill has established that the withheld documents are protected by the attorney-client privilege, including whether Hill has waived that privilege. To the extent that the trial court did not rely on the breach-of-duty exception in rejecting Hill's assertion of privilege over documents responsive to RFP 26, this decision does not affect those reasons.

omitted.)). On the other hand, a direct appeal "provides an inadequate remedy" when a discovery order erroneously requires disclosure of privileged communications because, "[o]nce a privileged communication has been disclosed, the harm cannot be undone." *Crimson Trace Corp. v. Davis Wright Tremaine LLP*, 355 Or 476, 485, 326 P3d 1181 (2014) (brackets in original; internal quotation marks omitted). An appeal fails to remedy the harm that results from the disclosure of privileged communications regardless of whether that harm stems from the disclosure to one person—in this case, Johnson—or from the disclosure to many people. In short, if the trial court's ruling requiring disclosure was erroneous, the fact that the court also entered a protective order limiting the extent of that disclosure is not relevant to the question of mandamus jurisdiction.

Second, Johnson points out that mandamus "may serve only to enforce a known, clear legal right," *State v. Moore*, 361 Or 205, 212, 390 P3d 1010 (2017) (internal quotation marks omitted), and that, as a result, "the writ of mandamus cannot be used as a means of controlling judicial discretion," *Oregon State Hospital v. Butts*, 358 Or 49, 56, 359 P3d 1187 (2015) (internal quotation marks omitted). Johnson argues that the trial court exercised its discretion in compelling Hill to produce the responsive documents and, therefore, the trial court's order is beyond our mandamus jurisdiction.

That argument, too, is incorrect. At issue in this case is the trial court's interpretation of the breach-of-duty exception contained in OEC 503(4)(c). Hill contends that the exception should be interpreted as applying only to communications between the parties directly involved in the alleged breach—in this case, Hill and Johnson. The trial court interpreted the exception more broadly when it ruled that Hill was required to produce communications between himself and attorneys other than Johnson. In deciding how to interpret OEC 503(4)(c), the trial court was not exercising discretion—it was deciding a question of law. *See OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 585, 341 P3d 701 (2014) ("Determining the intended meaning of a statute ultimately is a question of law."). As a result, a peremptory writ of

mandamus in this case, if issued, would be used to enforce a legal right—Hill's right not to produce privileged communications—rather than control judicial discretion.

On the merits, interpreting the breach-of-duty exception in OEC 503(4)(c) presents a question of statutory interpretation because the rules of evidence are enacted by the legislature and codified in statute. *Crimson Trace Corp.*, 355 Or at 485; ORS 40.225 (the codification of OEC 503). We review questions of statutory interpretation for errors of law. *CBI Services, Inc.*, 356 Or at 585. And we apply our usual method of statutory interpretation, seeking to give effect to the intent of the legislature as demonstrated by the text in context and any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

The text of both the attorney-client privilege and the breach-of-duty exception to that privilege is found in OEC 503. That rule provides, as relevant here:

> "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client *** [b]etween the client *** and the client's lawyer ***."

OEC 503(2)(a). The breach-of-duty exception relevantly provides:

> "There is no privilege under this section:
>
> "*****
>
> "As to a communication relevant to an issue of breach of duty by the lawyer *** to the client or by the client to the lawyer ***."

OEC 503(4)(c).

As an initial matter, Hill does not dispute that his allegations against Johnson allege "the breach of a duty" that a lawyer owed to his client, for the purposes of OEC 503(4)(c). The parties, therefore, agree that the breach-of-duty exception may apply to this case. The parties, however, dispute the scope of the exception as it applies to this case.

Hill argues that the breach-of-duty exception applies only to communications between the parties directly involved in the alleged breach. That is, where a client alleges that a former attorney has breached a duty or where an attorney alleges that a former client has breached a duty (usually fee recovery), the exception ensures that the client cannot claim a privilege as to communications with the attorney relevant to the dispute. Taking a much broader view, Johnson contends that the only textual limit on the scope of the exception is relevancy: any "communication" that is "relevant" to the alleged breach between the client and attorney falls within the breach-of-duty exception. By its terms, according to Johnson, the exception therefore covers communications between the client and other lawyers that are relevant to the dispute between the client and the allegedly breaching lawyer. Thus, although the only allegedly breached duty in this case is one that Johnson owed to Hill, Johnson contends that the breach-of-duty exception applies to relevant communications between Hill and the attorneys that he contacted or hired to vacate the supplemental judgment in his dissolution matter.

We pause to note the other possible implications of Johnson's argument. Because Johnson contends that the only limit to the scope of the exception is relevance, he interprets the scope of the exception broadly, which has the effect of narrowing the scope of the attorney-client privilege. Under Johnson's interpretation, the attorney-client privilege would cease to protect not only relevant communications between Hill and his repair counsel, but also relevant communications that Hill and Johnson have had with the attorneys representing them in the malpractice proceeding.[2] Even more, because Johnson himself is an attorney, the broad reading of the exception that he advances would risk the disclosure of communications that he had with other clients, if those communications were relevant to Hill's allegations.[3]

---

[2] Johnson argues that the breach-of-duty exception should not apply to his communications with his malpractice counsel, but he offers no reason why his interpretation would not extend that far.

[3] *See Glade v. Superior Court*, 76 Cal App 3d 738, 747, 143 Cal Rptr 119, 125 (Cal Ct App 1978) (rejecting same interpretation of California's equivalent evidence rule, noting that, if the breach-of-duty exception "were construed to extend to this situation, a litigant who tendered an issue of breach relative to his own

Although the text of the exception is not free of ambiguity, it provides support for Hill's narrower interpretation. In particular, the breach-of-duty exception uses the definite article "the" in referring to "a communication relevant to an issue of breach of duty by *the* lawyer \*\*\* to *the* client or by *the* client to *the* lawyer \*\*\*." OEC 503(4)(c) (emphases added). The definite article "the" "often signifies a narrowing intent, a reference to something specific, either known to the reader or listener or uniquely specified." *Hickey v. Scott*, 370 Or 97, 107, 515 P3d 368 (2022) (internal quotation marks omitted). In other words, "the" often precedes a word with an identifiable referent—here, an identifiable lawyer and identifiable client.

A referent may be identifiable because it was previously introduced. *See* Rodney Huddleston & Geoffrey K. Pullum, *The Cambridge Grammar of the English Language*, ch 5, § 6.1, 370 (2002) (providing an example of a referent that is "identifiable by virtue of [its] prior mention"). The subsection creating the attorney-client privilege demonstrates that use. The provision starts by referring to "[a] client" who holds the privilege and then later refers to "the client" who receives professional legal services: "*A client* has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to *the client* \*\*\*." OEC 503(2) (emphases added). The client receiving professional legal services is the client holding the privilege.

A similar dynamic would seem to inform the meaning of the breach-of-duty exception. The subsection creating the attorney-client privilege precedes the subsection creating the breach-of-duty exception. The attorney-client privilege applies to communications between, among other people, "the client \*\*\* and the client's lawyer." OEC 503(2)(a). So, when the breach-of-duty exception says that it applies to "a communication relevant to an issue of breach of duty by *the* lawyer \*\*\* to *the* client or by *the* client to *the* lawyer," OEC 503(4)(c) (emphases added), a natural reading is

---

representation by an attorney would be able unilaterally to waive the attorney-client privilege held by other clients of the same attorney").

that it is referring to the lawyer and client who are parties to the communication over which the attorney-client privilege would otherwise apply. In that case, the breach-of-duty exception would apply only when the parties to the communication at issue are also the parties directly involved in the alleged breach.

Our view that the text tends to favor Hill's interpretation is confirmed by the legislative history, which demonstrates that the legislature intended the breach-of-duty exception to apply only to communications between the parties directly involved in the alleged breach. The breach-of-duty exception was created as part of the 1981 Oregon Evidence Code. Or Laws 1981, ch 892, § 32(4)(c). "The principal source of legislative history for the 1981 Oregon Evidence Code is the 1981 Conference Committee Commentary." *State v. Serrano*, 346 Or 311, 324, 210 P3d 892 (2009).

The commentary cites three sources for Oregon's exception. *See* Legislative Commentary to OEC 503, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 503.02, 305 (5th ed 2007). Two of the sources are relevant to the question before us, both supporting Hill's narrower interpretation.[4] First, the commentary cites *McCormick on Evidence* § 91 (Edward W. Cleary, ed.) (2d ed 1972). That treatise states that the breach-of-duty exception might be conceived as extending a separate rule: when two or more persons jointly consult an attorney, their communications with the attorney will be privileged in controversies with third parties but not in controversies among themselves. *Id.* § 91, 189-90. In that situation, the parties jointly consulting with an attorney "had obviously no intention of keeping these secrets from each other, and hence as between themselves it was not intended to be confidential." *Id.* § 91, 190.

According to the treatise, the breach-of-duty exception might represent the same logic: "[H]ere again the notion that as between the participants in the conference the intention was to disclose and not to withhold the matters

---

[4] The third source cited by the commentary is New Jersey Evidence Rule 26(2)(c). Although that rule offers wording for the breach-of-duty exception codified in OEC 503(4)(c), neither the parties nor this court have identified New Jersey case law addressing the scope question presented in this case.

communicated offers a plausible reason." *Id.* § 91, 191. In support, the treatise cites a decision by this court applying that reasoning. *See id.* § 91, 191 n 95 (citing *Minard v. Stillman*, 31 Or 164, 49 P 976 (1897)). Regardless of whether that reasoning is sound, the treatise is evidence of how the legislature likely would have viewed the scope of the breach-of-duty exception that it adopted. And the scope suggested in the treatise would apply the exception to communications between the client and the attorney who are directly involved in the alleged breach—because there would be no expectation of confidentiality as to communications relevant to controversies between themselves—but would not extend the exception beyond that.

Second, the commentary cites to California Evidence Code § 958, which is substantively the same as OEC 503(4)(c). *See* Cal Evid Code § 958 (1981) ("There is no privilege under this article as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship."). When the Oregon legislature adopts a statute modeled after the statute of another jurisdiction, this court has frequently consulted that jurisdiction's case law interpreting the model statute as informing the intent of the Oregon legislature. *State v. Guzman/Heckler*, 366 Or 18, 29-30, 455 P3d 485 (2019). We assume that the Oregon legislature intended to adopt "an interpretation of that statute by the highest court of that jurisdiction that was rendered in a case decided before adoption of the statute by Oregon." *Eklof v. Persson*, 369 Or 531, 541, 508 P3d 468 (2022) (internal quotation marks omitted). And, where the highest court of that jurisdiction has not addressed the interpretive question at issue, we have, at times, viewed interpretations by lower appellate courts of that jurisdiction as representing the intentions of the Oregon legislature, particularly where there is a "consistent pattern" of lower court decisions applying that interpretation. *Guzman/Heckler*, 366 Or at 30; *see id.* ("[A]lthough we have accorded greater significance to decisions of the highest court of another jurisdiction, we have never altogether discounted decisions of lower appellate courts of that jurisdiction, even in the absence of legislative

history specifically indicating that our legislature was aware of those decisions.").

Before Oregon adopted the breach-of-duty exception, the California Court of Appeal had repeatedly and consistently rejected Johnson's broad interpretation of that exception in favor of Hill's narrower interpretation, as limited to communications between the parties directly involved in the alleged breach. For example, in one case presenting facts like this case, a client brought a malpractice claim against her former attorney, who had represented her in a marriage dissolution proceeding. *Miller v. Superior Court*, 111 Cal App 3d 390, 392, 168 Cal Rptr 589, 589 (Cal Ct App 1980). She alleged that the former attorney's negligence resulted in the undervaluation of community property stock retained by her former husband. *Id.* The trial court ordered the client to produce communications that she had had with other attorneys after the alleged malpractice. *Id.* The California Court of Appeal reversed, holding that the breach-of-duty exception applied only to communications between the attorney and client who were directly involved in the alleged breach:

> "Clearly, in an attorney breach case [the breach-of-duty] exception applies only where the alleged breach is by the attorney from whom the information is sought. Where, as here, the client has not alleged a breach by the attorney involved in the communication in question, the privilege for that communication remains intact."

*Id.* at 392-93, 168 Cal Rptr at 590; *see also Schlumberger Ltd. v. Superior Court*, 115 Cal App 3d 386, 392-93, 171 Cal Rptr 413, 417 (Cal Ct App 1981) (same, relying on *Miller*).

Similarly, in another case, clients brought fraud and malpractice claims against their former attorney and, through discovery, sought relevant communications between their former attorney and his other clients. *Glade v. Superior Court*, 76 Cal App 3d 738, 742-43, 143 Cal Rptr 119, 122 (Cal Ct App 1978). The trial court ordered the attorney to produce the responsive client communications. *Id.* at 743, 143 Cal Rptr at 122-23. The California Court of Appeal reversed, holding that,

> "[i]f [the breach-of-duty exception] were construed to extend to this situation, a litigant who tendered an issue of breach

relative to his own representation by an attorney would be able unilaterally to waive the attorney-client privilege held by other clients of the same attorney. None of the statutory exceptions to the attorney-client privilege are designed to permit such a result."

*Id.* at 747, 143 Cal Rptr at 125. Those California decisions support Hill's narrower interpretation of the breach-of-duty exception.

Johnson contends that we need not consult out-of-state case law to decide this question because, according to Johnson, this court has authorized discovery from repair counsel in a malpractice proceeding like this, citing *Gwin v. Lynn*, 344 Or 65, 176 P3d 1249 (2008). Our decision in *Gwin*, however, addressed a different question—namely, the extent to which a party may obtain discovery from someone who is both a fact witness and a testifying expert.

In *Gwin*, a plaintiff brought a malpractice action against her former attorney, intending to call her repair counsel as an expert witness to testify to the efficacy of her mitigation efforts. Expert witnesses are generally beyond the scope of discovery available under ORCP 36 B. *Id.* at 72. On that basis, the trial court denied the defendant's motion to depose the repair counsel in her capacity as a fact witness. *Id.* at 69-70. We disagreed with the trial court's ruling, holding that the repair counsel could be deposed about her "actions as a factual participant in the effort to mitigate damages" but was not required to answer questions "that call[ed] for answers about her expert opinions." *Id.* at 73.

That issue is irrelevant to this case because Hill has not opposed Johnson's discovery efforts by arguing that his repair counsel are beyond the reach of ORCP 36 B, as the plaintiff in *Gwin* had argued. Instead, Hill has argued that at least some of the documents responsive to Johnson's discovery requests are covered by the attorney-client privilege in OEC 503. The court in *Gwin* expressly declined to address any issues regarding the scope of the attorney-client privilege. *See* 344 Or at 72 n 6 (explaining that the mandamus proceeding before the court "does not concern—and we express no opinion concerning—the possibility that some of [repair counsel]'s testimony may be shielded by other doctrines, such

as the work-product doctrine or the lawyer-client privilege"); *id.* at 75 (noting that "issues respecting [the work-product doctrine or the lawyer-client privilege] are beyond the scope of this mandamus proceeding"). As a result, *Gwin* provides no support for Johnson's interpretation of the breach-of-duty exception to the attorney-client privilege.

Finally, Johnson points out that the Conference Committee Commentary to the breach-of-duty exception explains that the "exception is required by considerations of fairness and policy." Kirkpatrick, *Oregon Evidence* § 503.02 at 305. Johnson contends that Hill's narrower interpretation of the exception is unfair because it would prevent Johnson from accessing communications that are potentially relevant to Johnson's ability to defend himself from Hill's allegation of malpractice.

It is undeniable that interpreting OEC 503(4)(c) to cover communications only between the parties directly involved in the alleged breach may prevent the discovery of relevant evidence. But that is true with all evidentiary privileges. Evidentiary privileges "are designed to limit the search for the truth, rather than facilitate its discovery." *Serrano*, 346 Or at 325 n 6. We tolerate the loss of evidence that results from applying the evidentiary privileges because the privileges "protect certain relationships that have been deemed sufficiently important, such as the relationship between married persons, doctor and patient, clergy and penitent, and attorney and client." *Id.* By protecting communications between people within those relationships, the privileges "encourage open communication between the persons in the protected relationship, which theoretically, in turn, strengthens that relationship and encourages participation in such relationships." *Id.*; *see also Frease v. Glazer*, 330 Or 364, 370, 4 P3d 56 (2000) (explaining that the purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice" (internal quotation marks omitted)).

Historically, the breach-of-duty exception has been directed at the unfairness that results from the fact that

the client holds the privilege. OEC 503(2) (client holds the privilege). Without the breach-of-duty exception, a client in a dispute with his or her former attorney could waive the privilege, if doing so would help the client, or could continue to assert the privilege, if doing so would encumber the attorney's claims or defenses. *See* Cal Evid Code § 958, Law Revision Commission Comments (1965) ("It would be unjust to permit a client either to accuse his attorney of a breach of duty and to invoke the privilege to prevent the attorney from bringing forth evidence in defense of the charge or to refuse to pay his attorney's fee and invoke the privilege to defeat the attorney's claim."). The breach-of-duty exception corrects that unfairness by providing both the client and the attorney in the dispute with equal access to communications between them.

In sum, we agree with Hill that the breach-of-duty exception, codified in OEC 503(4)(c), applies only to communications between the client and the attorney who are directly involved in the alleged breach. In this case, where Hill has alleged that Johnson breached a duty of care owed to him, the breach-of-duty exception applies only to communications between Hill and Johnson. As a result, the trial court erred in applying the breach-of-duty exception to communications that Hill had with counsel other than Johnson responsive to RFP 10, RFP 26, and RFP 45.[5]

A peremptory writ of mandamus shall issue.

---

[5] The parties also presented briefing to this court on whether the work-product doctrine applied to the communications responsive those requests for production. That dispute is not part of the mandamus proceeding. That issue was not included in Hill's petition for writ of mandamus. And, in any event, the issue would not be appropriate to address as part of this mandamus proceeding, because the parties both agree that, even though the trial court's order compelling production did not address the work-product doctrine, the trial court recognized that some of the documents responsive to those requests may be subject to the work-product doctrine and has not yet ruled on any specific assertions of that doctrine by Hill.