JUSTICE SHEA
delivered the Opinion of the Court.
¶1 The plaintiffs in these consolidated appeals, Robert Nelson and Kelli Tyrrell (Tyrrell), as Special Administrator of the Estate of Brent Tyrrell (Brent), pled violations of the Federal Employers’ Liability Act *419 (FELA), 45 U.S.C. §§ 51 through. 60, for injuries allegedly sustained while Nelson and Brent were employed by BNSF Railway Company in states other than Montana. Both actions were brought in the Thirteenth Judicial District Court, Yellowstone County. BNSF moved to dismiss both plaintiffs’ claims for lack of personal jurisdiction. Judge Michael G. Moses, presiding over Tyrrell’s action, denied BNSF’s motion to dismiss. Judge G. Todd Baugh, presiding over Nelson’s action, granted BNSF’s motion to dismiss. BNSF appeals Judge Moses’ order, and Nelson appeals Judge Baugh’s order. The issues on appeal are:

1. Whether Montana courts have personal jurisdiction over BNSF under the FELA.

2. Whether Montana courts have personal jurisdiction over BNSF under Montana law.

¶2 We hold that Montana courts have general personal jurisdiction over BNSF under the FELA and Montana law. We affirm Judge Moses’ order denying BNSF’s motion to dismiss Tyrrell’s complaint. We reverse Judge Baugh’s order granting BNSF’s motion to dismiss Nelson’s complaint. We remand both cases for further proceedings consistent with this Opinion.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 In March 2011, Nelson, a North Dakota resident, sued BNSF to recover damages for knee injuries he allegedly sustained while employed by BNSF as a fuel truck driver. BNSF is a Delaware corporation, and its principal place of business is Texas. Nelson’s complaint did not allege that Nelson ever worked in Montana or was injured in Montana.
¶4 BNSF filed a M. R. Civ. P. 12(b)(2) motion to dismiss Nelson’s complaint for lack of personal jurisdiction. Judge Baugh granted BNSF’s motion, stating: “I believe 3 Judges in this District have faced similar Motions which they have denied based on applicable precedent. Their rulings seem sound but do not look at whether based on common sense it may be time to reassess FELA cases in Montana which have no forum related connection.” Judge Baugh then relied upon a recent United States Supreme Court decision, Daimler AG v. Bauman,_ U.S. _, 134 S. Ct. 746 (2014) (discussed in our resolution of Issue 1), to hold that BNSF’s “due process rights prevent this Court from exercising general all-purpose jurisdiction over [BNSF] and this Court does not have specific jurisdiction.” Nelson appeals Judge Baugh’s order granting BNSF’s motion to dismiss.
¶5 In May 2014, Tyrrell sued BNSF for injuries Brent allegedly *420 sustained during the course of his employment with BNSF. The complaint alleged that, while working for BNSF, Brent was exposed to various carcinogenic chemicals that caused him to develop kidney cancer and ultimately led to his death. The complaint did not allege that Brent ever worked for BNSF in Montana or that any of the alleged chemical exposures occurred in Montana.
¶6 BNSF filed a M. R. Civ. P. 12(b)(2) motion to dismiss Tyrrell’s complaint for lack of personal jurisdiction. Judge Moses denied BNSF’s motion. He adopted and incorporated Montana Thirteenth Judicial District Court, Yellowstone County Judge Gregory R. Todd’s ruling on BNSF’s M. R. Civ. P. 12(b)(2) motion to dismiss in Jesse R. Monroy v. BNSF Ry. Co., Cause No. DV 13-799 (Aug. 1, 2014). In Monroy, Judge Todd found:
BNSF has established 40 new facilities in Montana since 2010 and invested $470 million dollars in Montana in the last four years .... In 2010, Montana shipped by BNSF 35.2 million tons of coal, 8.5 million tons of grain and 2.9 million tons of petroleum .... In the last year approximately 57,000 BNSF rail cars of grain per year rode the rails in Montana and 230,000 BNSF rail cars of coal per year go out of Montana. In October 2013, BNSF opened an economic development office in Billings, Montana, because of the heightened amount of business not only for coal and grain in Montana, but in particular the Bakken oil development.[1]
Judge Todd analyzed Montana and United States Supreme Court precedent interpreting the FELA. He concluded that, under Montana’s long-arm statute, M. R. Civ. P. 4(b)(1), BNSF “does meet the criteria of being found within Montana and having substantial, continuous and systematic activities within Montana for general jurisdiction purposes.” BNSF appeals Judge Moses’ order denying BNSF’s motion to dismiss, which adopted and incorporated Judge Todd’s analysis in Monroy.
STANDARD OF REVIEW
¶7 “The existence of personal jurisdiction is a question of law, which we review de novo.” Tackett v. Duncan, 2014 MT 253, ¶ 16, 376 Mont. 348, 334 P.3d 920.
DISCUSSION
¶8 1. Whether Montana courts have personal jurisdiction over BNSF *421 under the FELA.
¶9 Congress enacted the FELA in 1908. The Act was “an avowed departure from the rules of common law,” in response to “the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety.” Sinkler v. Mo. Pac. R.R. Co., 356 U.S. 326, 329, 78 S. Ct. 758, 762 (1958). In keeping with Congressional intent, “[t]he United States Supreme Court has repeatedly noted that the FELA is to be given a liberal construction in favor of injured railroad employees so that it may accomplish humanitarian and remedial purposes.” Labella v. Burlington N., 182 Mont. 202, 205, 595 P.2d 1184, 1186 (1979) (citing Urie v. Thompson, 337 U.S. 163, 69 S. Ct. 1018 (1949); Coray v. S. Pac. Co., 335 U.S. 520, 69 S. Ct. 275 (1949); McGovern v. Phila. & Reading R.R., 235 U.S. 389, 35 S. Ct. 127 (1914)).
¶10 When the FELA was initially enacted, “venue of actions under it was left to the general venue statute, 35 Stat. 65, which fixed the venue of suits in the United States courts, based in whole or in part upon the [FELA], in districts of which the defendant was an inhabitant.” Balt. & Ohio. R.R. Co. v. Kepner, 314 U.S. 44, 49, 62 S. Ct. 6, 8 (1941) (citation omitted). However, “[Litigation promptly disclosed what Congress considered deficiencies in such a limitation of the right of railroad employees to bring personal injury actions.” Kepner, 314 U.S. at 49, 62 S. Ct. at 8 (citations omitted). Thus, in 1910, Congress added the following language to Section 6 of the FELA, 45 U.S.C. § 56:
Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.
See Kepner, 314 U.S. at 49, 62 S. Ct. at 8 (citing Act of Apr. 5, 1910, Pub. L. No. 61-117, ch. 143, 36 Stat. 291).
¶11 This language was added to rectify “the injustice to an injured employee of compelling him to go to the possibly far distant place of habitation of the defendant carrier, with consequent increased expense for the transportation and maintenance of witnesses, lawyers and parties, away from their homes.” Kepner, 314 U.S. at 50, 62 S. Ct. at 8. The amendment was “deliberately chosen to enable the plaintiff, in the words of Senator Borah, who submitted the report on the bill [to amend the FELA], ‘to find the corporation at any point or place or State where *422 it is actually carrying on business, and there lodge his action, if he chooses to do so.’ ” Kepner, 314 U.S. at 50, 62 S. Ct. at 8 (quoting 45 Cong. Rec. 4034 (1910) (statement of Sen. William Borah)). In Miles v. Ill. Cent. R.R. Co., 315 U.S. 698, 702, 62 S. Ct. 827, 829 (1942), the U.S. Supreme Court explained:
The specific declaration in [45 U.S.C. § 56] that the United States courts should have concurrent jurisdiction with those of the several states, and the prohibition against removal, point clearly to the conclusion that Congress has exercised its authority over interstate commerce to the extent of permitting suits in state courts, despite the incidental burden, where process may be obtained on a defendant ... actually carrying on railroading by operating trains and maintaining traffic offices within the territory of the court’s jurisdiction.
Justice Jackson, concurring, further noted:
Unless there is some hidden meaning in the language Congress has employed, the injured workman or his surviving dependents may choose from the entire territory served by the railroad any place in which to sue, and in which to choose either a federal or a state court of which to ask his remedy. There is nothing which requires a plaintiff to whom such a choice is given to exercise it in a self-denying or large-hearted manner. There is nothing to restrain use of that privilege ....
Miles, 315 U.S. at 706-07, 62 S. Ct. at 832 (Jackson, J., concurring).
¶12 The U.S. Supreme Court consistently has interpreted 45 U.S.C. § 56 to allow state courts to hear cases brought under the FELA even where the only basis for jurisdiction is the railroad doing business in the forum state. E.g., Pope v. Atl. Coast Line R.R. Co., 345 U.S. 379, 73 S. Ct. 749 (1953); Miles, 315 U.S. 698, 62 S. Ct. 827. For example, in Pope, a plaintiff who resided and was injured in Georgia filed a FELA action against his railroad employer, a Virginia corporation, in Alabama state court. The plaintiff grounded jurisdiction and venue on 45 U.S.C. § 56. The railroad requested an injunction from a Georgia state court pursuant to a Georgia statute providing Georgia courts with the power to enjoin Georgia residents from bringing suits in a foreign jurisdiction. The Georgia Supreme Court ruled in favor of the railroad. The U.S. Supreme Court reversed, holding that 45 U.S.C. § 56 “establishes a petitioner’s right to sue in Alabama. It provides that the employee may bring his suit wherever the carrier ‘shall be doing business,’ and admittedly respondent does business in Jefferson County, Alabama. Congress has deliberately chosen to give petitioner a transitory cause of action....” Pope, 345 U.S. at 383, 73 S. Ct. at 751.
*423 ¶13 Similarly, in Miles, 315 U.S. 698, 62 S. Ct. 827, a Tennessee resident was killed while working for his railroad employer in Tennessee. The railroad was an Illinois corporation. The employee’s estate brought suit against the railroad in Missouri. The Tennessee Court of Appeals, at the railroad’s request, permanently enjoined the employee’s estate from prosecuting his claim in Missouri. The U.S. Supreme Court reversed, holding:
Congress has exercised its authority over interstate commerce to the extent of permitting suits in state courts, despite the incidental burden, where process may be obtained on a defendant ... actually carrying on railroading by operating trains and maintaining traffic offices within the territory of the court’s jurisdiction.
Miles, 315 U.S. at 702, 62 S. Ct. at 829.
¶14 BNSF contends that Daimler,_ U.S._, 134 S. Ct. 746, overruled prior U.S. Supreme Court precedent holding the FELA conferred jurisdiction to state courts where the railroad does business. In Daimler, Argentinian plaintiffs filed suit in California Federal District Court against DaimlerChrysler Aktiengesellschaft (Daimler), a German public stock company headquartered in Stuttgart that manufactured Mercedes-Benz vehicles in Germany. The complaint alleged that, during Argentina’s “Dirty War” from 1976-1983, Daimler’s Argentinian subsidiary, Mercedes-Benz Argentina, collaborated with Argentinian security forces to kidnap, detain, torture, and kill Mercedes-Benz Argentina workers. The plaintiffs sought damages for the alleged human rights violations from Daimler under the laws of the United States, California, and Argentina. They predicated jurisdiction over the lawsuit on the California contacts of Mercedes-Benz USA, LLC, an indirect subsidiary of Daimler incorporated in Delaware with its principal place of business in New Jersey.
¶15 The U.S. Supreme Court granted certiorari “to decide whether, consistent with the Due Process Clause of the Fourteenth amendment, Daimler is amenable to suit in California courts for claims involving only foreign plaintiffs and occurring entirely abroad.” Daimler, _ U.S. at _, 134 S. Ct. at 753. The Court emphasized that “general jurisdiction requires affiliations so ‘continuous and systematic’ as to render [the foreign corporation] essentially at home in the forum State.” Daimler, _ U.S. at _ n.11, 134 S. Ct. at 758 n.11 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011)) (internal quotation marks omitted and changes in original). The Court rejected the plaintiffs’ “general or all- *424 purpose” theory of jurisdiction, under which Daimler could be sued “on any and all claims against it, wherever in the world the claims may arise.” Daimler, _ U.S. at _, 134 S. Ct. at 751. The Court determined that such “exorbitant” exercises of personal jurisdiction are “barred by due process constraints on the assertion of adjudicatory authority.” Daimler, _ U.S. at _, 134 S. Ct. at 751. The Court emphasized that “no part of [Mercedes-Benz] Argentina’s alleged collaboration with Argentinian authorities took place in California or anywhere else in the United States” and rejected the plaintiffs’ attempt to found jurisdiction over Daimler on the California contacts of Mercedes-Benz USA. Daimler, _ U.S. at _, 134 S. Ct. at 752, 760. In doing so, the Court noted that Mercedes-Benz USA’s relationship with Daimler was that of an independent contractor, and it had no authority to make binding obligations or act on behalf of Daimler. Daimler, _ U.S. at _, 134 S. Ct. at 752.
¶16 Daimler addressed “the authority of a court in the United States to entertain a claim brought by foreign plaintiffs against a foreign defendant based on events occurring entirely outside the United States.” Daimler, _ U.S. at _, 134 S. Ct. at 750. Unlike the cases before us, Daimler did not involve a FELA claim or a railroad defendant. Likewise, none of the cases BNSF cites to support its position that Daimler precludes state court jurisdiction over FELA claims against railroads involved FELA claims or railroad defendants.[2] In Daimler, the U.S. Supreme Court did not address personal jurisdiction under the FELA, nor did it need to: the Court has long held that the FELA does not apply to torts that occur in foreign countries, even when all parties involved are citizens of the United States. See N.Y. Cent. R.R. Co. v. Chisholm, 268 U.S. 29, 31, 45 S. Ct. 402, 402 (1925); accord Cox v. Chesapeake Ohio R.R. Co., 494 F.2d 349, 350 (6th Cir. 1974) (noting that Chisholm is “a firm restriction on the extra territorial application” of the FELA and that “the Supreme Court apparently added to this resolve in Lauritzen v. Larsen, [345 U.S. 571, 581, 73 S. Ct. 921, 927 (1953)], wherein it stated that, ‘we have held [the FELA] not applicable to an American citizen’s injury sustained in Canada while in service of an American employer’ ”).
*425 ¶17 Moreover, Daimler did not present novel law. Rather, the U.S. Supreme Court emphasized prior holdings that general jurisdiction requires foreign corporations to have affiliations so “continuous and systematic” as to render them “at home” in the forum state. Daimler, _ U.S. at _, 134 S. Ct. at 749 (citing Goodyear, 564 U.S. at 919, 131 S. Ct. at 2851). Congress drafted the FELA to make a railroad “at home” for jurisdictional purposes wherever it is “doing business.” See Kepner, 314 U.S. at 49-50, 62 S. Ct. at 8 (citing 45 Cong. Rec. at 4034). Therefore, Daimler did not overrule decades of consistent U.S. Supreme Court precedent dictating that railroad employees may bring suit under the FELA wherever the railroad is “doing business.”
¶18 The U.S. Supreme Court’s decision in Denver & Rio Grande W.R.R. Co. v. Terte, 284 U.S. 284, 52 S. Ct. 152 (1932), provides further guidance on whether BNSF is subject to suit under the FELA by way of “doing business” in Montana. In Terte, the U.S. Supreme Court addressed whether a Missouri state court could entertain a FELA suit against two different railroad companies — the Denver and Rio Grande Western Railroad Company (Rio Grande) and the Atchison, Topeka and Santa Fe Railway Company (Santa Fe). The railroad employee sought damages for injuries sustained in Colorado by the railroad companies’ joint negligence. The U.S. Supreme Court addressed the personal jurisdiction of the Missouri court over the two railroads, respectively. The Court held that the Rio Grande could not be sued in Missouri, because:
The Rio Grande, a Delaware corporation, operates lines which lie wholly within Colorado, Utah and New Mexico. It neither owns nor operates any line in Missouri; but it does own and use some property located there. It maintains one or more offices in the State and employs agents who solicit traffic. These agents engage in transactions incident to the procurement, delivery and record of such traffic. It is not licensed to do business in Missouri.
Terte, 284 U.S. at 286, 52 S. Ct. at 153. By contrast, the U.S. Supreme Court held that “the Santa Fe was properly sued” in Missouri, relying on the following facts:
The Santa Fe, a Kansas corporation, owns and operates railroad lines in Missouri, Kansas, Colorado, and other States. It is licensed to do business in Missouri and has an office and agents in Jackson CountyL, Missouri]. These agents transact the business ordinarily connected with the operation of a carrier by railroad.
Terte, 284 U.S. at 286, 52 S. Ct. at 153.
¶19 It is undisputed that BNSF owns and operates railroad lines in *426 Montana. BNSF is licensed to do business and has offices and agents in Montana. BNSF’s agents in Montana transact business ordinarily connected with the operation of a railroad carrier. Thus, under the U.S. Supreme Court’s reasoning in Terte, BNSF is “properly sued” in Montana. See Terte, 284 U.S. at 287-88, 52 S. Ct. at 153. BNSF is “doing business” in Montana, and Montana courts have general personal jurisdiction over BNSF under 45 U.S.C. § 56.
¶20 This conclusion is in line with the U.S. Supreme Court’s “liberal construction” of the FELA in favor of injured railroad workers. See Urie, 337 U.S. at 180, 69 S. Ct. at 1030. 45 U.S.C. § 56 does not specify whether the “concurrent jurisdiction” conferred upon the state and federal courts refers only to subject-matter jurisdiction or personal jurisdiction, the U.S. Supreme Court has never given it such an interpretation, and it is not the province of this Court to insert such a limitation. See § 1-2-101, MCA (“In the construction of a statute, the office of the judge is ... not to insert what has been omitted ....”).
¶21 Moreover, as BNSF’s counsel acknowledged at oral argument, BNSF’s interpretation of 45 U.S.C. § 56 would mean that a Montana resident, hired and employed by BNSF in Montana, who was injured while working — even temporarily — for BNSF in another state, would not be able to bring his action in the state in which he regularly resides and where his employer regularly conducts business. Such a result is in direct contravention of the FELA’s purpose of protecting injured railroad workers from what the U.S. Supreme Court characterized as the “injustice” of having to travel far from home to bring suit against the railroad. See Kepner, 314 U.S. at 49-50, 62 S. Ct. at 8. And if Montana residents may sue BNSF in a Montana state court for injuries that occur outside of Montana, so may residents of other states. See Miles, 315 U.S. at 704, 62 S. Ct. at 830 (“To deny citizens from other states, suitors under [the FELA], access to [Missouri’s] courts would, if [Missouri] permitted access to its own citizens, violate the Privileges and Immunities Clause.”) (citing U.S. Const. art. IV, § 2).
¶22 Relying on a case that is factually and legally distinguishable, BNSF asks us to depart from the language of 45 U.S.C. § 56 — and from a century of U.S. Supreme Court precedent interpreting it — to conclude that the FELA no longer provides Montana courts with jurisdiction over cases in which the plaintiff was injured outside of Montana. We decline to do so. BNSF does business in Montana; therefore, under the FELA, Montana courts have general personal jurisdiction over BNSF.
¶23 2. Whether Montana courts have personal jurisdiction over BNSF under Montana law.
*427 ¶24 The FELA does not require states to entertain suits arising under it; rather it empowers them to do so where local law permits. See Douglas v. N.Y., New Haven & Hartford R.R. Co., 279 U.S. 377, 388, 49 S. Ct. 355, 356 (1929) C‘[T]here is nothing in the Act of Congress that purports to force a duty upon [State] Courts as against an otherwise valid excuse.”) (citation omitted); Mondou v. N.Y., New Haven & Hartford R.R. Co. (Second Employers’ Liab. Cases), 223 U.S. 1, 59, 32 S. Ct. 169, 179 (1912) (“[R]ights arising under [the FELA] may be enforced, as of right, in the courts of the States when their jurisdiction, as prescribed by local laws, is adequate to the occasion.”). However, “the Federal Constitution prohibits state courts of general jurisdiction from refusing to [enforce the FELA] solely because the suit is brought under a federal law.” McKnett v. St. Louis & S.F. Ry. Co., 292 U.S. 230, 233-34, 54 S. Ct. 690, 692 (1934). See also Dice v. Akron, Canton & Youngstown R.R. Co., 342 U.S. 359, 364-65, 72 S. Ct. 312, 316 (“[N]o State which gives its courts jurisdiction over common law actions for negligence may deny access to its courts for a negligence action founded on the [FELA].”). Further, the existence of jurisdiction “creates an implication of duty to exercise it, and that its exercise may be onerous does not militate against that implication.” Mondou, 223 U.S. at 58, 32 S. Ct. at 178.
¶25 Montana courts conduct a two-step inquiry to determine whether the exercise of personal jurisdiction over a nonresident defendant is appropriate. Edsall Constr. Co. v. Robinson, 246 Mont. 378, 381, 804 P.2d 1039, 1041 (1991). First, we determine whether jurisdiction exists pursuant to M. R. Civ. P. 4(b)(1). If it does, we next determine “whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice embodied in the due process clause.” Simmons Oil Corp. v. Holly Corp., 244 Mont. 75, 83, 796 P.2d 189, 193 (1990).
¶26 Personal jurisdiction can be either general or specific. Specific jurisdiction “focuses on the relationship among the defendant, the forum, and the litigation, ... and depends on whether the defendant’s suit-related conduct created a substantial connection with the forum state.” Tackett, ¶ 19 (citations and internal quotation marks omitted). Conversely, general jurisdiction exists over “[a]ll persons found within the state of Montana.” M. R. Civ. P. 4(b)(1). A nonresident defendant that maintains “substantial” or “continuous and systematic” contacts with Montana is “found within” the state and may be subject to Montana’s jurisdiction, even if the cause of action is unrelated to the defendant’s activities within Montana. Tackett, ¶ 20 (quoting *428 Simmons Oil Corp., 244 Mont. at 83, 796 P.2d at 194).
¶27 BNSF does not dispute that it conducts business in Montana by operating trains and maintaining traffic offices. According to BNSF, it has over 2,000 miles of railroad track and more than 2,000 employees in Montana. BNSF maintains facilities in Montana, owns real estate in Montana, has a telephone listing in Montana, and does direct advertising in Montana with Montana media. Each of these factors is significant in determining whether general jurisdiction over BNSF exists. See Bedrejo v. Triple E Can., Ltd., 1999 MT 200, ¶¶ 8, 12, 295 Mont. 430, 984 P.2d 739. Though BNSF alleges that its revenues from Montana represent less than ten percent of its nationwide business, that fact alone does not defeat personal jurisdiction. See Reed v. Am. Airlines, 197 Mont. 34, 36, 640 P.2d 912, 914 (1982) (holding that a nonresident corporation’s activities “must comprise a significant component of the company’s business, although the percentage as related to total business may be small” for personal jurisdiction purposes). Judge Baugh, though he granted BNSF’s motion to dismiss, recognized that BNSF “has way more than minimum contacts with the State of Montana. It is a significant, substantial, continuous and systematic business enterprise in Montana even though its operations in some of the 27 other states it operates in are far greater.” With that aspect of Judge Baugh’s opinion, we agree: BNSF maintains substantial, continuous, and systematic contacts with Montana. Thus, BNSF is “found within” the state under M. R. Civ. P. 4(b)(1). See Tackett, ¶ 20.
¶28 Given that personal jurisdiction exists pursuant to M. R. Civ. P. 4(b)(1), we next determine whether exercising personal jurisdiction over BNSF comports with the due process clause. Simmons Oil Corp., 244 Mont. at 82-83, 796 P.2d at 193. BNSF’s contention that it is not subject to personal jurisdiction in Montana courts is largely based on its incorrect interpretation of Daimler, discussed in our resolution of Issue 1. In contrast to BNSF’s position, we have held that “[t]he District Courts of Montana clearly have jurisdiction” to hear FELA cases. Labella, 182 Mont. at 204, 595 P.2d at 1186. We also have followed federal case law in giving the FELA a liberal construction to accomplish its humanitarian and remedial purposes. Davis v. Union Pac. R.R., 282 Mont. 233, 245, 937 P.2d 27, 34 (1997). This is especially true regarding a plaintiffs forum selection under the FELA, Davis, 282 Mont. at 245-46, 937 P.2d at 34, “even if that choice of forum involves forum shopping,” State ex rel. Burlington N.R.R. v. District Court, 270 Mont. 146, 891 P.2d 493, 499 (1995) (rejecting BNSF’s motion to *429 dismiss an out-of-state FELA plaintiffs claim notwithstanding the doctrine of forum non conveniens and § 25-2-201, MCA).
¶29 Our own precedent on this issue is consistently clear and consonant with the U.S. Supreme Court’s interpretation of 45 U.S.C. § 56. In Labella, 182 Mont. at 207, 595 P.2d at 1187, we explained:
The policy of the State of Montana is clearly announced in the State Constitution. ‘Courts of justice shall be open to every person, and speedy remedy afforded for every injury to person, property, or character.’ 1972 Mont. Const., Art. II, § 16. This constitutional right is unrestricted by reference to residence or citizenship. Indeed, such qualification could not pass muster under the Privileges and Immunities Clause of Art. TV, § 2 of the United States Constitution.
If Montana courts have personal jurisdiction over BNSF for FELA cases brought by Montana residents, Montana courts necessarily must have personal jurisdiction over BNSF for FELA cases brought by nonresidents.
¶30 Under Montana law, Montana courts have general personal jurisdiction over BNSF.[3]
CONCLUSION
¶31 Montana courts have general personal jurisdiction over BNSF under the FELA and Montana law. We therefore affirm Judge Moses’ order denying BNSF’s motion to dismiss Tyrrell’s complaint, and we reverse Judge Baugh’s order granting BNSF’s motion to dismiss Nelson’s complaint. We remand both cases for further proceedings consistent with this Opinion.
CHIEF JUSTICE McGRATH, JUSTICES COTTER, BAKER, WHEAT and RICE concur.

 BNSF has not disputed any of these facts.

 In its opening brief, BNSF cites to BNSF Ry. Co. v. Superior Court, 235 Cal. App. 4th 591 (Cal. Ct. App. 2015). This case was rendered nonciteable pending review by the California Supreme Court in BNSF Ry. Co. v. Superior Court, 352 P.3d 417 (Cal. 2015); therefore, it has no persuasive value.

 Because we resolve the consolidated appeals on this issue, we need not address the plaintiffs’ contention that BNSF consented to personal jurisdiction.