IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KARL LANGLOIS,<br><br>                Respondent,<br><br>v.<br><br>BNSF RAILWAY COMPANY, a<br>Delaware Corporation,<br><br>                Appellant. | No. 77752-1-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION<br><br>FILED:  May 20, 2019 |

CHUN, J. — A "remedial and humanitarian purpose" underlies the Federal Employer's Liability Act (FELA).[1]  So too does a policy favoring uniformity in the Act's operation.  Against this backdrop, we decide whether, given the particulars of this case, equitable tolling applies to FELA's limitations period.

In 2012 and 2014, Karl Langlois suffered injuries while working for BNSF Railway Company in Washington State.  Langlois, a Washington resident, filed suit against BNSF, a Delaware corporation, with its principal place of business in Texas.  He did so in Oregon state court, claiming negligence under FELA.[2]  BNSF moved to dismiss the case for lack of personal jurisdiction.  The Oregon trial court denied the motion.  Later, the Oregon Supreme Court and the United States Supreme Court issued rulings under which it became clear that Oregon courts lacked personal jurisdiction over BNSF in Langlois's case.

---

[1] Urie v. Thompson, 337 U.S. 163, 181-82, 69 S. Ct. 1018, 93 L. Ed.  1282 (1949).

[2] FELA makes railroad employers "liable in damages to any person suffering injury while [they are] employed."  45 U.SC. § 51.

Langlois then filed an action in Washington with the same allegations. BNSF moved for summary judgment, arguing that FELA's three-year limitations period had expired. Langlois conceded that the period had expired, but argued for the court to apply equitable tolling. The trial court accepted his argument and denied the motion.

Because the policy considerations underlying FELA support equitable tolling here and Langlois meets the diligence and extraordinary circumstance elements of the doctrine, we affirm.

## I. BACKGROUND

### A. Oregon Complaint

On December 30, 2014, Langlois filed a FELA action against BNSF in Oregon state court. The complaint alleged negligence arising from two injuries Langlois suffered while working for BNSF in Washington. The injuries occurred on January 25, 2012 and February 24, 2014.

BNSF moved to dismiss the complaint for lack of personal jurisdiction on April 10, 2015. It argued an Oregon court could not exercise general personal jurisdiction consistent with the Fourteenth Amendment's Due Process Clause because its contacts with Oregon did not render it "at home" in the state. Langlois opposed the motion, contending that section 56 of FELA[3] conferred

_____

[3] 45 U.S.C. § 56 provides:

No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued.

Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.

personal jurisdiction over BNSF. On June 5, 2015, the Oregon trial court denied the motion to dismiss, determining BNSF's "uniquely long history of operations within the state" allowed general jurisdiction over it in accordance with the Due Process Clause.

BNSF then petitioned the Oregon Supreme Court for an alternative writ of mandamus, claiming the trial court erred in denying its motion. The court denied the petition on August 6, 2015. BNSF then filed its answer to Langlois's complaint and the parties proceeded toward trial.

On May 5, 2016, in a separate case, Barrett v. Union Pacific Railroad Co., the Oregon Supreme Court issued an alternative writ of mandamus to address the same issue raised by BNSF's earlier petition—whether, in a FELA case, an Oregon court could exercise general jurisdiction over a railroad in connection with out-of-state activities.[4] 359 Or. 526, 379 P.3d 521 (2016) (Barrett I). The trial court stayed Langlois's case pending resolution of the issue.

On March 2, 2017, the Oregon Supreme Court issued its ruling in Barrett v. Union Pacific Railroad Co., 361 Or. 115, 390 P.3d 1031 (2017) (Barrett II). It determined that Oregon lacked personal jurisdiction under both section 56 and the Due Process Clause. With regard to section 56, the court acknowledged that the United States Supreme Court "recognized in Kepner,[5] [that] the first

---

[4] The parties discuss the Oregon Supreme Court's decisions of Barrett v. Union Pacific Railroad Co., 361 Or. 115, 390 P.3d 1031 (2017) (Barrett II) and Figueroa v. BNSF Railway. Co., 361 Or. 142, 390 P.3d 1019 (2017). Barrett II addressed general personal jurisdiction under the Due Process Clause and section 56; and Figueroa considered whether the railway defendant had consented to personal jurisdiction when it appointed a registered agent in Oregon for receiving service of process. 361 Or. at 145. Because Langlois does not make an argument regarding consent, we focus only on Barrett II.

[5] Baltimore & Ohio R.R. Co. v. Kepner, 314 U.S. 44, 62 S. Ct. 6, 86 L. Ed. 28 (1941).

sentence of section 56 does not confer personal jurisdiction over out-of-state corporate defendants but instead provides for expanded venue 'if there is jurisdiction.'" Barrett II, 361 Or. at 128 (internal quotation marks omitted) (quoting Baltimore & Ohio R.R. Co. v. Kepner, 314 U.S. 44, 51, 62 S. Ct. 6, 86 L. Ed. 28 (1941)). In considering general jurisdiction under the Due Process Clause, the court decided the railroad lacked sufficient contacts with Oregon to render it "at home" in the state. Barrett II, 361 Or. at 119. Therefore, it held that Oregon courts could not exercise personal jurisdiction over the railroad under the United States Supreme Court's decision in Daimler AG v. Bauman, 517 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014). Barrett II, 361 Or. at 123.

A few months later, in BNSF Railway Co. v. Tyrrell, the United States Supreme Court addressed the same issue with regard to Montana state courts. ___U.S.___, 137 S. Ct. 1549, 198 L. Ed. 2d 36 (2017) (Tyrrell II). The Montana Supreme Court had held a Montana state court could exercise personal jurisdiction over BNSF under section 56 and, in the alternative, under the state's long-arm statute. Tyrrell II, 137 S. Ct. at 1553-54. The United States Supreme Court reversed, holding "that § 56 does not address personal jurisdiction over railroads." Tyrrell II, 137 S. Ct. at 1553. The Court went further to state, "Nowhere in Kepner or in any other decision did we intimate that § 56 might affect personal jurisdiction." Tyrrell II, 137 S. Ct. at 1555. With regard to general jurisdiction, the Court clarified that its Daimler decision "applies to all state-court assertions of general jurisdiction over nonresident defendants." Tyrrell II, 137 S. Ct. at 1553. It then determined that BNSF lacked sufficient contacts with

4

Montana to warrant general jurisdiction under the Due Process Clause. Tyrrell II, 137 S. Ct. at 1558-59.

After the decisions in Barrett II and Tyrrell II, BNSF filed a motion for summary judgment in the Langlois matter, arguing the court lacked personal jurisdiction. The trial court agreed and dismissed the case.

B. Washington Complaint

On March 15, 2017, less than two weeks after the Barrett II decision, Langlois filed this FELA action in King County Superior Court. The complaint again alleged that BNSF had acted negligently with regard to the injuries Langlois suffered while working in Washington.

BNSF moved for summary judgment, arguing FELA's three-year statute of limitations barred Langlois's claims. Langlois opposed the motion, asserting that equitable tolling applied. Langlois contended he met both requirements for equitable tolling—i.e., diligence and extraordinary circumstance. The parties did not dispute material facts. Wash. Court of Appeals oral argument, Langlois v. BNSF Ry Co. No. 77752-1-I (April 18, 2019), at 2 min., 5 sec. through 2 min., 14 sec. and 7 min., 36 sec. through 7 min., 45 sec. (on file with court).

The trial court agreed with Langlois and denied BNSF's motion for summary judgment. The trial court also appeared to sua sponte grant partial summary judgment in favor of Langlois on the equitable tolling issue.[6] Specifically, the court stated:

---

[6] BNSF asserts that the trial court effectively granted sua sponte partial summary judgment for Langlois on the issue. Langlois does not dispute this.

I don't think there's any dispute that Plaintiff has been diligent. But what defense argues is that Plaintiff hasn't established that there's any extraordinary circumstance that's occurred.

So the question is really, you know, whether or not the fact that BNSF was routinely submitting to jurisdiction in Oregon on Washington accident cases, whether or not -- and I don't think there's really any dispute that they were. And I think that the court denied their motion for summary judgment and had been for some time because that was sort of the practice. And I think it was an unusual or extraordinary circumstance when all of a sudden the court reversed itself and decided that section, I think it's 65,[7] is not -- is a venue statute, it doesn't confer personal jurisdiction and it did change -- it did change the case law with regard to whether or not you could bring cases in states where the injury didn't occur.

I think balancing the equities, I believe that equitable tolling should apply here, and I am going to deny the motion to dismiss.

BNSF then moved for certification under RAP 2.3(b)(4), which motion the trial court granted. A commissioner of this court granted discretionary review of the trial court's ruling.

## II. ANALYSIS

### A. Standard of Review

We review de novo orders on motions for summary judgment. Kim v. Lakeside Adult Family Home, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). And we view the facts and reasonable inferences in the light most favorable to the non-moving party. Kim, 185 Wn.2d at 547. Courts should grant summary judgment only when the pleadings, affidavits, depositions, and admissions on file demonstrate that no genuine issue of material fact exists. Kim, 185 Wn.2d at 547. When the parties do not dispute the facts underlying a claim for equitable tolling, "the question whether the statute of limitations should be equitably tolled

---

[7] Presumably the trial court had intended to refer to section 56 of FELA.

6

is also reviewed de novo." Doe v. Busby, 661 F.3d 1001, 1011, (9th Cir. 2011).

B. Equitable Tolling in FELA Cases: Legal Framework & Policy Considerations

Federal law governs whether equitable tolling applies in FELA actions. See Norfolk S. Ry. Co. v. Sorrell, 549 U.S. 158, 165, 127 S. Ct. 799, 166 L. Ed. 2d 638 (2007). In appropriate circumstances, a court may allow equitable tolling in such an action. Burnett v. New York Cent. R.R. Co., 380 U.S. 424, 427, 85 S. Ct. 1050 (1965). A court determines whether equitable tolling applies on a case-by-case basis. Holland v. Florida, 560 U.S. 631, 649-50, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010). Federal law allows equitable tolling "only if the litigant establishes two elements: (1) that [they have] been pursuing [their] rights diligently, and (2) that some extraordinary circumstance stood in [their] way and prevented timely filing." Menominee Indian Tribe of Wisconsin v. United States, ___ U.S. ___, 136 S. Ct. 750, 755, 193 L. Ed. 2d 652 (2016) (Menominee II).[8] Once the court determines these elements have been established, it may then consider any absence of prejudice to the defendant. See Menominee II, 136 S. Ct. at 757 n.5. "Federal courts have typically extended equitable relief only sparingly." Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990).

---

[8] In Menominee II, the United States Supreme Court noted that (1) this two-part test from Holland (the Holland test) concerned a habeas petition; and (2) it has never held that the test applies outside the habeas context. 136 S. Ct. at 756 n.2. Federal courts have continued to apply the Holland test to nonhabeas cases, however, and the parties do not argue for a different analysis; ergo, we analyze equitable tolling below under the Holland test. See, e.g., Booth v. United States, 914 F.3d 1199, 1207 (9th Cir. 2019) (applying Holland test to an action brought under the Federal Tort Claims Act); Sisseton–Wahpeton Oyate of the Lake Traverse Reservation v. U.S. Corps of Eng'rs, 888 F.3d 906, 917–18 (8th Cir. 2018) (applying Holland test to a civil claim).

But in FELA actions, courts also consider the statute's remedial purpose and the importance of uniformity in its operation. As to its remedial purpose, Congress enacted FELA to give railroad workers a federal remedy for injuries caused by their employer's or fellow employee's negligence. Atchison, T. & S. F. Ry. Co. v. Buell, 480 U.S. 557, 561, 107 S. Ct. 1410, 94 L. Ed. 2d 563 (1987). Because of this "remedial and humanitarian purpose," courts liberally construe FELA. Urie v. Thompson, 337 U.S. 163, 181-82, 69 S. Ct. 1018, 93 L. Ed. 1282 (1949).

With regard to uniformity, the Supreme Court "has long recognized that the FELA has a uniform operation." Burnett, 380 U.S. at 433. "'[T]he period of time within which an action may be commenced is a material element in . . . uniformity of operation.'" Burnett, 380 U.S. at 433 (quoting Engel v. Davenport, 271 U.S. 33, 39, 46 S. Ct. 410, 70 L. Ed. 813 (1926)); see also Norfolk & W. Ry. Co. v. Liepelt, 444 U.S. 490, 493 n.5, 100 S. Ct. 755, 62 L. Ed. 2d 689 (1980) ("One of the purposes of the [FELA] was to 'create uniformity throughout the Union' with respect to railroads' financial responsibility for injuries to their employees.") (quoting H.R. REP. No. 1386, 60th Cong., 1st Sess., 3 (1908))). Indeed, one purpose underlying the statutory limitation provision in particular was to "achieve national uniformity." Burnett, 380 U.S. at 434 (citing Engel, 271 U.S. at 39.)

To disallow equitable tolling in circumstances such as Langlois's would undermine these purposes. First, it would deprive Langlois of a decision on the merits. See Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 509, 77 S. Ct. 443,

1 L. Ed. 2d 493 (1957) (noting that in enacting FELA Congress intended "to secure the right to a jury determination"). Second, and significantly, it would thwart uniformity in operation because plaintiffs in similar circumstances would potentially face opposing outcomes depending on their choice of forum. A federal court lacking jurisdiction over a FELA action could choose to transfer the case to the appropriate forum instead of dismissing it. Indeed, pursuant to 28 U.S.C. § 1406(a), had Langlois brought his action in Oregon federal court, that court would have had the discretion to transfer the case to a federal district court with personal jurisdiction without the statute of limitations expiring. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962). Without equitable tolling, in such a situation, plaintiffs who file in state court would have the same suit dismissed and then time barred if the statute of limitations had expired. Such opposing outcomes constitute the very type of "procedural anomaly" that the Supreme Court has sought to avoid. Burnett, 380 U.S. at 433.

Moreover, such an anomaly would, contrary to Congress's intent, discourage plaintiffs from bringing FELA actions in state court. See Burnett, 380 U.S. at 434 ("Congress, in providing for concurrent state and federal court jurisdiction and prohibiting removal of FELA cases to federal courts, has sought to protect the plaintiff's right to bring an FELA action in a state court."). Concurrent jurisdiction helps prevent "the injustice to an injured employee of compelling [them] to go to the possibly far distant place of habitation of the defendant carrier, with consequent increased expense for the transportation and

maintenance of witnesses, lawyers and parties, away from their homes." Kepner, 314 U.S. 49-50.

Keeping in mind that FELA's policy considerations weigh in favor of equitable tolling in this case, we now turn to the doctrine's elements.

## C. Diligence

BNSF argues Langlois did not act diligently because he filed his lawsuit in Oregon even though Oregon courts clearly lacked jurisdiction. Langlois contends he acted diligently because he reasonably believed he could properly bring his claims in Oregon state court. We determine Langlois meets the diligence element as a matter of law.

"The diligence required for equitable tolling purposes is 'reasonable diligence,' "not 'maximum feasible diligence.'" Holland, 560 U.S. at 653 (internal quotation marks and citation omitted) (quoting Lonchar v. Thomas, 517 U.S. 314, 326, 116 S. Ct. 1293, 134 L. Ed. 2d 440 (1996) and Starns v. Andrews, 524 F.3d 612, 618 (5th Cir. 2008). When determining diligence, "courts consider the [litigant's] overall level of care and caution in light of [their] particular circumstances." Doe, 661 F.3d at 1013. Federal courts have allowed equitable tolling "where the claimant has actively pursued [their] judicial remedies by filing a defective pleading during the statutory period." Irwin, 498 U.S. at 96.

Here, Langlois filed his Oregon lawsuit within FELA's limitations period. The filing of the lawsuit within the period demonstrates he did not "sleep on his rights." Burnett, 380 U.S. at 429 (noting "[p]etitioner here did not sleep on [their] rights but brought an action within the statutory period"). Even though Langlois

brought his case in a forum that higher courts ultimately determined lacked personal jurisdiction over BNSF, the "filing shows a desire on the part of [Langlois] to begin his case and thereby toll whatever statutes of limitation would otherwise apply. The filing itself shows the proper diligence on the part of [Langlois] which such statutes of limitation were intended to insure." See Goldlawr, Inc., 369 U.S. at 467.

BNSF argues Langlois failed to act diligently because legal precedent clearly demonstrated that Oregon courts lacked jurisdiction. However, before the Oregon Supreme Court's decision in Barrett II and the United States Supreme Court's decision in Tyrrell II, at least four Oregon decisions and the Supreme Court of Montana[9] concluded, as had Langlois, that state courts could exercise personal jurisdiction over railroads operating in their respective state for out-of-state activities—either based on section 56 or the Fourteenth Amendment's Due Process Clause.[10] This demonstrates the reasonableness of Langlois's decision to file his lawsuit in Oregon. Thus, BNSF's "overzealous use of hindsight seeks to push the diligence required for tolling well outside the realm of 'reasonable.'" See Doe, 661 F.3d at 1013.

---

[9] These consist of the trial court ruling in Langlois's case; the trial court ruling in Newsom v. Union Pacific Railroad Co., No. 14 CV20433 (Multnomah County Cir. Ct., Or. May 8, 2015); the trial court ruling in Barrett II, 361 Or. at 117; the trial court ruling in Figueroa, 361 Or. at 144; and the Montana Supreme Court ruling in Tyrrell v. BNSF Railway Co., 2016 MT 126, 383 Mont. 417, 373 P.3d 1 (2016) (Tyrrell I).

[10] Because section 56 and the Due Process Clause constituted alternative grounds for finding personal jurisdiction, these court decisions show the reasonableness of Langlois's decision to file in Oregon regardless of whether they relied on the same grounds as Langlois—i.e., section 56—or the Due Process Clause. Additionally, that courts found jurisdiction in cases similar to Langlois's demonstrates the reasonableness of his argument regardless of whether the courts' decisions came before or after he filed his suit.

BNSF additionally contends that Langlois's failure to file a protective suit in Washington before March 2017 precludes a finding of diligence. It argues Langlois knew that BNSF would challenge jurisdiction when it submitted its motion to dismiss and that "the Oregon Supreme Court had preliminarily rejected his § 56 theory of jurisdiction" when it issued the alternative writ in Barrett II. BNSF, however, offers no case law to support its argument that the issuance of an alternative writ demonstrates a "preliminary reject[ion]" of a party's argument. Additionally, to accept BNSF's argument and require plaintiffs to file protective actions any time a court preliminarily rejects a jurisdictional argument would potentially burden courts with unnecessary actions and sacrifice judicial economy. Pace v. DiGuglielmo, 544 U.S. 408, 429, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005) (Stevens, J., dissenting) (noting that insisting plaintiffs file protective actions would "increase, not reduce, delays in the federal system" by causing "a flood of protective filings in the federal district courts").[11]

Moreover, "[t]he standard for reasonable diligence does not require an overzealous or extreme pursuit of any and every avenue of relief. It requires the effort that a reasonable person might be expected to deliver under [their] particular circumstances." Doe, 661 F.3d at 1015. Here, Langlois timely filed his FELA action in Oregon and initially successfully defended against BNSF's motion to dismiss on jurisdictional grounds. Again, several courts also concluded that state courts could exercise personal jurisdiction in similar circumstances.

---

[11] While the Court in Pace suggested a plaintiff concerned about a limitations period could file a protective suit, it did not hold that a failure to file one constitutes a lack of reasonable diligence. Palacios v. Stephens, 723 F.3d 600, 607-08 (5th Cir. 2013).

Accordingly, Langlois reasonably did not file a protective action in Washington before March 2017. We conclude that Langlois establishes the diligence required for equitable tolling.

## D. Extraordinary Circumstance

BNSF next asserts that Langlois fails to meet the extraordinary circumstance element because a misreading of precedent does not constitute such a circumstance. Langlois contends an extraordinary circumstance exists because of the Oregon Supreme Court's decision in Barrett II. He also points to BNSF's "revers[al of] its stated admission" from other cases that Oregon courts could exercise jurisdiction over it in claims regarding out-of-state injuries. We determine Langlois also satisfies the extraordinary circumstance element.

This element "is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." Menominee II, 136 S. Ct. at 756. Federal courts require "that a litigant seeking tolling show that 'some extraordinary circumstance *stood in [their] way.*'" Menominee II, 136 S. Ct. at 756 (quoting Holland, 560 U.S. at 649). Extraordinary circumstances do not include a "'garden variety claim of excusable neglect.'" Holland, 560 U.S. at 651 (quoting Irwin 498 U.S. at 96).

A plaintiff filing their claim during the limitations period but in a forum lacking jurisdiction may constitute an extraordinary circumstance. See Burnett, 380 U.S. at 434; Irwin, 498 U.S. at 96; Oltman v. Holland Am. Line, Inc., 538 F.3d 1271, 1278 (9th Cir. 2008); Granger v. Aaron's, Inc., 636 F.3d 708, 712 (5th Cir. 2011). Where the question of jurisdiction is unclear, "it would be . . . unrealistic

13

and . . . inappropriate to force [a litigant] even with the assistance of an attorney to predict which one of two reasonable jurisdictional theories a court may adopt." Fox v. Eaton Corp., 615 F.2d 716, 720 (6th Cir. 1980); see also Valenzuela v. Kraft, Inc., 801 F.2d 1170, 1175 (9th Cir. 1986) (allowing equitable tolling for a case originally filed in the wrong jurisdiction because the law lacked clarity at the time the plaintiff filed).

Here, the absence of legal clarity regarding whether the Oregon courts could exercise personal jurisdiction over Langlois's FELA action satisfies the extraordinary circumstance element. Langlois had a reasonable basis for believing Oregon courts had jurisdiction over BNSF at the time he filed his complaint. As stated above, the Oregon trial court in Langlois's case and other courts found jurisdiction when considering similar situations. Thus, Barrett II clarified whether Oregon had personal jurisdiction over BNSF. Furthermore, prior to Langlois's action, BNSF had not objected to jurisdiction in similar cases. See Burnett, 380 U.S. at 429 (considering that the defendant railroad had previously waived objections to venue when deciding to toll a statute of limitations in a FELA case originally filed in the wrong forum).

BNSF likens this case to Menominee II. There, the plaintiff mistakenly believed that it did not need to present its claims to a contracting officer to participate in a class action. Menominee II, 136 S. Ct. at 754-55. The Court found that this mistake of law constituted a "'garden variety claim of excusable neglect'" that did not justify equitable tolling. Menominee II, 136 S. Ct. at 757 (citing Irwin, 498 U.S. at 96).

14

Menominee II, however, differs from the present case in two key ways. First, it considered a situation where the plaintiff made a clear mistake of law as opposed to a situation where the law lacked clarity at the time the plaintiff filed their lawsuit. Second, the case concerned a defective class, not a defective pleading—such as a complaint filed in the wrong venue or jurisdiction. See Menominee Indian Tribe of Wisconsin v. United States, 841 F.Supp.2d 99, 108 (D.D.C. 2012) (Menominee I). While a defective class raises issues regarding class tolling, a defective pleading relates to equitable tolling. Menominee I, 841 F.Supp.2d at 108. Moreover, the plaintiff in Menominee I, because of a mistake of law, failed to file a complaint or take any other legal action before the limitations period expired. See 841 F.Supp.2d at 108. Such a mistake amounts to no more than garden variety excusable neglect. Thus, Menominee II differs significantly from Langlois's situation, as he was not neglectful but rather, due to a lack of legal clarity, reasonably filed his complaint in the wrong forum within the limitations period. Thus, the analysis in Menominee II does not apply here.

Instead, Langlois's case more closely resembles Burnett, in which the Court held that equitable tolling applied during the pendency of a FELA action brought in an improper venue. 380 U.S. at 428. While BNSF attempts to distinguish the case because Langlois filed his case in the wrong jurisdiction, courts have extended Burnett to cases concerning jurisdictional errors. See Fox, 615 F.2d at 719-20 (allowing equitable tolling for a complaint originally filed in a court lacking subject-matter jurisdiction); Valenzuela, 801 F.2d at 1175 (same); Platoro Ltd., Inc. v. Unidentified Remains of a Vessel, 614 F.2d 1051, 1054 (5th

Cir. 1980) (permitting equitable tolling in case first filed in a court without personal jurisdiction).

Accordingly, because of the lack of legal clarity regarding personal jurisdiction at the time Langlois reasonably filed his complaint in Oregon, he also meets the extraordinary circumstance element.

E. Prejudice to the Defendant

Once a litigant establishes diligence and extraordinary circumstance, a court may consider any prejudice to the defendant. See Menominee II, 136 S. Ct. at 757 n.5. Statutes of limitations aim to assure fairness to defendants "by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Burnett, 380 U.S. at 428. But this "policy of repose," which aims to protect defendants "is frequently outweighed . . . where the interests of justice require vindication of the plaintiff's rights." Burnett, 380 U.S. at 428. "[T]he humanitarian purpose of the FELA makes clear that Congress would not wish a plaintiff deprived of his rights when no policy underlying a statute of limitations is served in doing so." Burnett, 380 U.S. at 434; see also Platoro, 614 F.2d at 1054 (stating that courts may "hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose") (citing Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 559, 94 S. Ct. 756, 38 L. Ed. 713 (1974)).

In this case, BNSF knew that Langlois planned to pursue a FELA action when he filed his Oregon lawsuit within the limitations period. After the Oregon trial court denied BNSF's motion to dismiss, the parties began to engage in

16

discovery. BNSF had the opportunity to preserve evidence and contact witnesses. Accordingly, BNSF cannot rely on the "policy of repose" embodied in the FELA statute of limitations. See Burnett, 380 U.S. at 429-30. We do not believe that permitting equitable tolling would prejudice BNSF.

## III. CONCLUSION

Given the importance of uniformity in FELA actions and because Langlois demonstrates both diligence and extraordinary circumstance, we determine that Langlois's case warrants equitable tolling. Accordingly, the filing of the Oregon complaint tolled the limitations period until either a state court order dismissed the action, the action became final by the expiring of the time in which Langlois could appeal, or an appellate court entered a final judgment. Burnett, 380 U.S. at 435. Because Langlois filed his Washington complaint before any of these situations occurred, equitable tolling prevents the statute of limitations from barring his claims.

Affirmed.

_Chun, J._

WE CONCUR:

_____

_Dwyer, J._